Commonwealth *v.* Glass, Appellant.

Argued September 12, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Leonard F. Markel,* for appellant.

*Harold W. Spencer,* District Attorney, with him *W. C. Cahall, III,* Assistant District Attorney, for Commonwealth, appellee.

OPINION BY MONTGOMERY, J., November 15, 1962:

After having served twelve years as the elected sheriff of Montgomery County (third class) appellant retired from that office on the first Monday of January, 1956. Thereafter, he continued his control over a bank account in the Montgomery Bank and Trust Company which he had opened in his name as sheriff when he first took office in 1944, and into which he had deposited all money he had received in the operation of his office. His salary and the salary of his deputies were paid by Montgomery County and not deducted from the fees he collected.[1]

---

[1] Montgomery County having a population of over 150,000 had a salaried sheriff as provided in art. 14, §5 of the Pennsylvania Constitution; the Act of 1876, March 31, P. L. 13, §1, 16 P.S. 7841; and The County Code of 1955, Aug. 9, P. L. 323, §§1601-1604, 16 P.S. 1601-1604.

As of the date of appellant's retirement, the account showed a balance of $112,651.73, subject to outstanding checks which when cleared reduced it to $93,565.96. Said balance consisted of: (a) deposits made by litigants or their attorneys to indemnify the sheriff for costs and expenses in cases being processed by him, as authorized by the Act of 1923, P. L. 347, 16 P.S. 2662, and the Act of May 9, 1949, P. L. 927, §3, 16 P.S. 11303; (b) money of litigants in uncompleted cases, but not payable to or claimable by them as of that time; (c) moneys from completed cases then payable to parties other than the County of Montgomery to which the payees' right had been established; (d) possibly $810 of appellant's personal money which he had deposited to open the account in 1944.

All fees and commissions which had been earned by the appellant in his office prior to his retirement and which were the property of Montgomery County under the constitutional provision and statutes set forth in footnote 1, had been properly accounted for and paid monthly to the county treasurer at or prior to appellant's retirement. They constituted no part of said balance.

Following his retirement, appellant was billed monthly by his successor, Peter J. Reilly, for costs and commissions he had earned in completing cases that had been started during appellant's administration and for money due litigants as a result of such litigation. The bills were honored and paid as received, the payments totaling approximately $60,000. From the letters appearing as exhibits there appears to have been close cooperation between the two men to adjust these accounts. Until January 21, 1960, there was no general demand made by Mr. Reilly upon the appellant for delivery or payment of *all* moneys in his hands, regardless of the status of the litigation, as is provided for in the 1955 County Code, Aug. 9, P. L. 323, §407,

16 P.S. 407. Appellant responded to that demand and closed out the account with the delivery of a check dated June 21, 1960, to the order of Peter J. Reilly, Sheriff, and Montgomery County, in the amount of $35,119.87. This check was endorsed by Sheriff Reilly to the County of Montgomery and the proceeds of same are now held by its treasurer awaiting the outcome of litigation now pending to determine the ownership of same.[2]

The prosecutions in this as well as the other cases were begun about August 24, 1960, and resulted in verdicts of guilty on five indictments charging appellant with fraudulently converting moneys of the County of Montgomery between January 2, 1959, and January 20, 1960. Appellant was sentenced on one of the indictments and sentence was suspended on the others. This appeal followed the imposition of sentence.

Admittedly, appellant made withdrawals at various times from the account under discussion for his personal use and the use of another. The total amount of these withdrawals was approximately $15,000. Although they were subsequently redeposited and constituted part of the final payment to his successor and Montgomery County, such redeposit is not a defense, if the crime had been previously committed. *Commonwealth v. Spiegel*, 169 Pa. Superior Ct. 252, 82 A. 2d 692.

The primary issue before us is the status of the funds in the bank account. Appellant contends that they were his funds subject only to obligations incident to a debtor-creditor situation with third parties. The district attorney contends they were the property of

---

[2] In the Court of Common Pleas of Montgomery County, No. 13 June Term, 1960, In Equity, Samuel M. Glass, Plaintiff Peter J. Reilly, Sheriff of Montgomery County and the Commissioners of Montgomery County, defendants, filed June 30, 1960.

Montgomery County. The lower court approved the contention of the prosecution and charged the jury as a matter of law that all of the funds were the property of the county or that its treasurer was entitled to receive them; and cited the Acts of May 23, 1945, P. L. 870, §2, 16 P.S. 11332, and of May 17, 1949, P. L. 1403, §§1-6, 27 P.S. 491-496, known as the Municipal Unclaimed Moneys Act.

From the charge and opinion of the lower court it is apparent that it considered the funds in the account, with the exception of the $810 referred to as the personal money of the appellant, as coming within but two categories, (a) fees and commissions belonging to Montgomery County, or (b) unclaimed money payable to its treasurer under the Municipal Unclaimed Moneys Act. We cannot adopt this analysis since it fails to recognize the distinction made by the Legislature in section 407 of The County Code hereinbefore recited (16 P.S. 407), between funds that are payable on demand to succeeding public officers and those which are payable under the act relating to unclaimed funds, and is contrary to the facts.

At the outset, the record demonstrates that all fees and commissions earned by appellant's office during his terms had been paid to Montgomery County, after a review of his cash book by the county controller's office. A statement of such earned fees offered by the Commonwealth (Exhibit C-7) shows each year from 1944 to 1955, inclusive, a sizeable balance remaining after deducting the salaries and expenses of the office from the "Fees Earned". We find nothing in the record indicating any falsifying of records or the withholding of earned fees and commissions by appellant. Since all unearned fees and commissions were paid as demanded by appellant's successor as they were earned by him, it cannot be said that appellant withheld or improperly used fees and commissions owned by Mont-

gomery County. The lower court seems to have overlooked the distinction between earned fees and commissions, and deposits of indemnity to cover fees to be subsequently earned. In *Commonwealth ex rel. Margiotti v. Cunningham,* 337 Pa. 289, 10 A. 2d 559, the status of such money is discussed fully and requires no further discussion, other than to state that until fees are earned indemnity deposits are not the property of either the sheriff or the county, but belong to litigants or their attorneys who made the deposits.

We have no doubt that the Legislature by the Municipal Unclaimed Moneys Act intended to exercise the sovereignty of the Commonwealth to take charge of abandoned property, or property the owner of which is unknown. In *Germantown Trust Company v. Powell,* 265 Pa. 71, 80, 108 A. 441, 443, it is stated: "That the State has power to fix a time when the presumption of death of the owner, or abandonment of the property, may arise cannot be open to question, . . ." The idea of abandonment by reason of disinterest, death, or loss of the owner's identity is the basic reason for the various escheat acts including the Municipal Unclaimed Moneys Act under discussion.

Clearly, the Municipal Unclaimed Moneys Act required appellant, while sheriff, as well as at the expiration of his last term of office, to pay to the county treasurer all moneys of third parties in his hands that were claimable but remained unclaimed; but it is equally clear that it did not compel him to pay over money not yet payable to litigants either as the result of litigation or as refunds from the indemnity deposits made to cover his costs and fees. These were proper items to be paid to his successors.

However, the record does contain evidence that part of the account did cover items that should properly have been paid under this act. According to Henry Pennington, a deputy in appellant's office, there were

such moneys payable as fines, lying-in expenses, a sum due the county library, etc., remaining in the account as of the date appellant retired from office. There is also some evidence that some of these were paid subsequently by appellant directly to the parties entitled to receive them. This money should have been paid to the county treasurer "for safekeeping" and payment to the rightful owners. However, there is nothing in the Municipal Unclaimed Moneys Act declaring such money to belong to Montgomery County.

Without prolonging this discussion, we conclude that the charges of the indictment find no support from the facts or by the law. No money of Montgomery County was converted by appellant to his own use or to the use of others. An allegation of particular ownership of funds alleged to be converted is necessary in the indictment. *Commonwealth v. Shanklin,* 87 Pa. Superior Ct. 53.

Furthermore, there is another reason why these prosecutions must fail. The act under which it is brought makes it a crime to fraudulently convert property "belonging to any other person." Section 103 of The Penal Code, Act of June 24, 1939, P. L. 872, 18 P.S. 4103, defines "person" to include "individual, co-partnership, association and corporation." Montgomery County, a political subdivision, does not fall within that definition. *Commonwealth v. Smith (No. 2),* 116 Pa. Superior Ct. 146, 177 A. 73.

This appeal must be sustained for the reasons just discussed and it is, therefore, unnecessary to decide the other issues before us as to the constitutionality of the Municipal Unclaimed Moneys Act which we have stated has no application in this matter, and the proper Statute of Limitations which is applicable.

Appeal sustained, the judgment of sentence reversed and appellant discharged.

**550**

Dissenting Opinion by Rhodes, P. J.:

I dissent and would affirm the court below on Judge Honeyman's opinion sustaining the conviction of appellant for fraudulent conversion. Plainly, the funds in the account were received by appellant on behalf of the County of Montgomery; they did not belong to appellant. Admittedly, appellant converted substantial amounts of these funds to his own personal use. Appellant was, in substance, guilty as charged in the indictments, and the conviction should not be set aside and appellant discharged on the unrealistic basis adopted by the majority.