THE STATE OF NEVADA, APPELLANT, v.
PIERRE BOUERI, RESPONDENT.

No. 14282

November 10, 1983                                    672 P.2d 33

*Brian McKay,* Attorney General, Carson City, *Robert Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Clark County, for Appellant.

*Carelli & Miller,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

This is an appeal by the state from an order granting a defense motion to dismiss a grand jury indictment alleging twelve counts of embezzlement. We conclude that the district court erred in granting the motion to dismiss and therefore reverse.

The facts adduced at the grand jury hearing revealed that respondent was vice-president of Caesar's Palace in charge of hosting affluent guests at Caesar's. As part of his duties, Boueri would arrange complimentary air fare and other services designed to induce such persons to visit Caesar's. Boueri would arrange the air fare through a local travel agent, Ghanem Travel, in the name of the customers. Unused tickets were returned to Ghanem by Boueri for refunds. When such refunds were sought, the agency would issue checks to the order of cash and usually deliver them to Boueri. At times Boueri would puchase tickets for customers and deliver them to associates of the customers, who could redeem the tickets as "commissions" for encouraging the guests to return to Caesar's. Boueri also obtained refunds for tickets issued in his own name.

Caesar's policy regarding refunds for unused tickets required the travel agent to either credit the refund against future invoices or pay the refund by check made out to Caesar's. Boueri was not authorized to receive a cash refund for his or customers' unused tickets.

At the grand jury hearing, evidence was presented that Boueri had authorized tickets for several persons who received neither tickets nor money from Caesar's. Refunds for these

tickets were given to Boueri by the travel agency in the form of checks made out to the order of cash. Boueri also received refunds for tickets issued in his own name.

The grand jury returned an indictment against Boueri listing twelve counts of embezzlement totalling $41,328.80. Boueri made a motion to dismiss the indictment, which the district court granted. This appeal followed.

The district court's first ground for dismissing the indictment was that the airline tickets for which the defendant obtained refunds were not the property of Caesar's Palace, thus making embezzlement[1] impossible. We disagree.

Although Caesar's did not furnish Boueri with a cash box from which he could embezzle funds, Caesar's did entrust Boueri with power and authority through which he could generate and possess his employer's funds. We therefore find persuasive the state's initial argument that Boueri qualified as a "bailee," "agent," and "person with whom any money, property or effects shall have been deposited or entrusted," as those words are used in NRS 205.300. This, coupled with the fact that Boueri admitted he knowingly gave tickets to "associates" of Caesar's customers in violation of Caesar's policy, is sufficient evidence of embezzlement to show probable cause and thus validate the charges against Boueri.

---

[1]NRS 205.300, which defines "embezzlement," reads as follows:

1. Any bailee of any money, goods or property, who shall convert the same to his own use, with the intent to steal the same or to defraud the owner or owners thereof and any agent, manager or clerk of any person, corporation, association or partnership, or any person with whom any money, property or effects shall have been deposited or entrusted, who shall use or appropriate such money, property or effects or any part thereof in any manner or for any other purpose than that for which the same was deposited or entrusted, shall be guilty of embezzlement, and shall be punished in the manner prescribed by law for the stealing or larceny of property or effects so taken, converted, stolen, used or appropriated.

2. Any use of the money, goods or property by any bailee thereof, other than that for which the same was borrowed, hired, deposited, carried, received or collected, shall be prima facie evidence of conversion and of intent to steal the same and defraud the owner or owners thereof.

3. The term "bailee," as used in this section, shall be construed to include and mean all persons with whom any money, goods or property has been deposited, and all persons to whom any goods or property has been loaned or hired, and all persons to whom any goods or property shall be delivered, for any purpose whatsoever, and all persons who shall, either as agent, collector or servant, be empowered, authorized or entrusted to carry, collect or receive any money, goods or property of another.

Boueri also contends that the guests of Caesar's, and not the hotel, were the owners of the tickets as recipients of a gift from Caesar's. This contention is meritless for lack of unconditional delivery of the gift to the donee or his agent. *See* Simpson v. Harris, 21 Nev. 353, 362, 31 P. 1009, 1011 (1893). Here, the donees were unaware of the tickets issued in their names, and the record reveals no evidence of payment to the alleged donees. An employee who embezzles property which comes into his hands by virtue of his employment cannot escape liability for embezzlement by a plea that the legal title to the property is not in the employer. State v. DeBois, 98 P.2d 354 (Utah 1940). *See also* Herrera v. State, 256 S.W.2d 851 (Tex. 1953); State v. Bengston, 367 P.2d 362 (Ore. 1961). In any event, Boueri's theory has no application to the three counts for tickets made out in his own name. Boueri's assertion that he was being reimbursed for tickets he paid for himself is not supported by any direct evidence.

The district court's second ground for dismissing the indictment was that only eleven grand jury members attended both sessions where evidence was presented against Boueri. The court decided that the state's copy of attendance records kept by the grand jury secretary was inadmissible. We again disagree.

The grand jury indictment must be based upon the concurrence of twelve or more grand jurors who have considered all the evidence. *See* NRS 172.255; Constancio v. Sheriff, 94 Nev. 71, 574 P.2d 1012 (1978). The attendance records kept by the grand jury secretary indicate that the indictment was issued after the same twelve grand jurors considered all the evidence. Boueri counters by citing NRS 172.075, which states, in pertinent part: "The secretary shall keep a record of the number of jurors concurring in the finding of every presentment or indictment and shall file the record with the clerk of the court, but the record shall not be made public except on order of the court. . . ." Boueri contends that the minutes of the grand jury attendance were neither filed nor authenticated as required by the statute, and are thus inadmissible under the statute.

NRS 172.075, however, does not preclude consideration of the state's exhibit. The statute only requires the court filing of minutes recording the individual votes of grand jurors, not minutes of attendance. Even if the revelation of attendance could, under certain conditions, necessarily reveal the voting input of the individual grand jurors, such a result would not

preclude use of the attendance records. Although the statute seeks to preserve the confidential nature of the voting process to avoid public criticism of individual grand jurors, this statutory purpose was not designed to be used as a basis for frustrating valid indictments. In the instant case, the district court was empowered by the statute to enlighten itself on the issue of the validity of the indictment by merely admitting the minutes of attendance as evidence on the subject. The failure to do so was error, as was the dismissal of the indictment based on the asserted lack of concurrence of twelve or more grand jurors.

Boueri next contends that the evidence presented to the grand jury failed to establish the commission of a crime. This contention is also without merit.

At a grand jury proceeding, the state is required to produce evidence establishing "probable cause" to hold an accused for trial. NRS 172.155(1). It is firmly established, nevertheless, that the finding of probable cause may be based on slight, even marginal, evidence. Sheriff v. Badillo, 95 Nev. 593, 600 P.2d 221 (1979); Perkins v. Sheriff, 92 Nev. 180, 547 P.2d 312 (1976). The state need only present enough evidence to create a reasonable inference that the accused committed the offense with which he or she is charged. LaPena v. Sheriff, 91 Nev. 692, 541 P.2d 907 (1975). Here, there was sufficient evidence before the grand jury to find probable cause that an indictment should issue against Boueri. Ghanem stated that refunds for the tickets were usually given to Boueri. The guests testified that they received neither tickets nor refunds. The logical inference, sufficient for a probable cause finding, is that Boueri received the money.

Boueri secondarily claims that because Caesar's never demanded the money, it somehow implicitly approved of Boueri's activities. Boueri's activities were outside the scope of his authority and he was aware of that fact. NRS 205.300 requires only that the bailee, trustee or agent of the employer appropriate the employer's property "in any manner or for any other purpose than that for which the same was deposited or entrusted. . . ." This claim therefore is also baseless.

Boueri further contends that the evidence fails to support the indictment because Ghanem's testimony required corroboration. This contention is also meritless. Ghanem has not been charged as an accomplice, and the record does not support any such charge. Even assuming that it could be shown that Ghanem was an accomplice, the evidence at the indictment stage presents sufficient independent corroboration to find probable

796

cause to issue an indictment. Where corroborative evidence is necessary to convict an accused, it is sufficient if it tends in itself to connect the defendant with the commission of the offense, absent consideration of any evidence which requires corroboration. Austin v. State, 87 Nev. 578, 491 P.2d 724 (1971). Corroborative evidence sufficient to find probable cause to issue a grand jury indictment, moreover, need not be of the same weight or substance as that supporting a conviction. *See* LaPena v. State, 96 Nev. 43, 604 P.2d 811 (1980); LaPena v. Sheriff, 91 Nev. 692, 541 P.2d 907 (1975).

Finally, Boueri urges that the dismissal of the indictment was proper because the evidence before the grand jury established, if at all, one, not twelve separate offenses. Alternatively, Boueri argues that the offenses were improperly joined in the indictment, thereby requiring dismissal. Boueri asserts that the twelve separate counts of the indictment relate to only one offense on the authority of State v. Mandich, 24 Nev. 336, 54 P. 516 (1898) and NRS 173.115. In *Mandich*, the defendant had taken small quantities of gold and silver cyanide from a mining company over a period of months. When and how such material was taken were unknown. This court held that the many takings could be treated as one continuing transaction so the state could prosecute for grand larceny rather than for several petit larcenies. The court did not hold that in all cases involving multiple thefts only one charge must be brought in a grand jury indictment.

Boueri's alternative argument, that an indictment charging several offenses must be dismissed, is directly contravened by NRS 173.115.[2] Clearly, the several counts of the indictment are "connected together" and constitute "parts of a common scheme or plan." Thus, there appears to be no statutory reason for dismissal of the indictment because it contained twelve counts. To the extent, therefore, that the district court's dismissal of the indictment was based on this final argument, the dismissal was erroneous.

The district court's order dismissing the grand jury indictment is hereby reversed and the case remanded for reinstatement of the indictment and further proceedings consistent with this opinion.

[2]NRS 173.115 reads as follows:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors or both, are:
1. Based on the same act or transaction; or
2. Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.