522 A.2d 1088

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Jerry ROSENZWEIG, Appellee.**

Supreme Court of Pennsylvania.

Argued Oct. 23, 1986.

Decided March 19, 1987.

Gaele McLaughlin Barthold, Deputy Dist. Atty., Ronald Eisenberg, John Donnelley, Philadelphia, for appellant.

Daniel M. Preminger, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

Appellee, Jerry Rosenzweig, was arrested and charged with one count of theft by unlawful taking (18 P.S. § 3921), one count of theft by failure to make required disposition of funds (18 P.S. § 3927), and forty-eight counts of forgery (18 P.S. § 4101). After being held over for court following a preliminary hearing, Appellee filed a Motion to Quash Return of the Municipal Court transcript. After argument, the Court of Common Pleas of Philadelphia County (Kiester, J., specially presiding) ordered Appellee discharged for lack of a *prima facie* case. The order was temporarily vacated, but then reinstated. Superior Court (Montemuro, Beck and Watkins, JJ.) affirmed in a Memorandum Opinion, 341 Pa.Super. 619, 491 A.2d 921.

At the preliminary hearing, the Commonwealth presented evidence to show[1] that Appellee, a pharmacy clerk for Esquire Drug Stores (Esquire), had, in Esquire's name and without the knowledge or authority of Esquire, entered into contracts with General Mills and Eastern Coupon Clearing House permitting Esquire to mail in manufacturers' coupons for reimbursement. Appellee then allegedly obtained coupons from a source other than Esquire and mailed most of the coupons to General Mills and Eastern Coupon Clear-

---

1. We do not mean to suggest that any of the facts recited herein must be taken as proven against Appellee. Although there has been a stipulation between the parties as to some of the facts alleged, all facts not admitted or stipulated must be proven against Appellee when the case goes to trial. The evidence presented by the Commonwealth is sufficient, however, to avoid the dismissal that occurred here.

ing House, again in Esquire's name. When General Mills or Eastern Coupon Clearing House mailed reimbursement checks to Esquire, Appellee allegedly intercepted the checks, endorsed Esquire's name on the back of the checks, endorsed his own name on the back of the checks, and then deposited the checks in his own personal account. Forty-eight such checks, in the total amount of $4,663.20, were allegedly intercepted and deposited.[2] The evidence reveals that no cash was found missing from Esquire Drugs (the store manager testified that the cash register balanced on each shift). It is unclear whether coupons submitted by Esquire's customers to Esquire were ever taken from Esquire by Appellee or by anyone else. All of the informations lodged against Appellee relating to forgery listed Esquire Drugs as the "person prejudiced." Likewise, the informations dealing with the theft charges specified Esquire Drugs as the owner of the property (checks) stolen. None of the informations was ever amended.

Superior Court thought that the discharge here, in the form of a grant of a motion to quash, could be reversed only when an abuse of discretion had occurred. Superior Court found that no abuse of discretion by the trial court had occurred in the instant case, reasoning that the Commonwealth, in the informations, failed to allege facts from which the trial court could have found a *prima facie* case of theft or forgery. Throughout the trial court proceedings, the Commonwealth framed the alleged crimes as being theft of property belonging to Esquire, and forgery which prejudiced the rights of Esquire Drugs. Superior Court believed that the trial court was correct in rejecting the Commonwealth's contention that Esquire had any rights which could be prejudiced or property which could be taken in this case. While it is clear that the prejudice to a victim's rights need not be pecuniary or proprietary in nature, Superior Court reasoned that there still must be some "right" which is being prejudiced. Superior Court did not

---

2. A few of the checks in question apparently had manufacturers as their payors who were "reimbursing" Esquire directly for the coupons submitted.

believe that the instant facts establish such a "right," or at least that the facts were so clear and compelling as to warrant a finding of abuse of discretion on the part of the trial court.

As to the theft charges, Superior Court likewise did not believe that the trial court abused its discretion when it found that Esquire had no ownership rights in the checks, *i.e.*, that Esquire suffered no loss of property and was thereby not a "victim" of any theft.

We granted allocatur herein because we were concerned about the severe prejudice resulting against the Commonwealth in this matter, and because we were also concerned about the resort to technical distinctions reminiscent of the common law writ system in interpreting provisions of the Crimes Code dealing with theft and forgery.

For the reasons set forth below, we reverse.

Section 3921 of the Pennsylvania Crimes Code (18 P.S. § 3921) provides, in pertinent part:

§ 3921. *Theft by unlawful taking or disposition.*

(a) *Movable property.*—A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof....

■ If the facts alleged in the instant case are proven, Appellee, by depositing checks made payable to Esquire in his own account, clearly "exercise[d] unlawful control over movable property of [Esquire] with intent to deprive [Esquire] thereof."

Section 3927 of the Crimes Code (18 P.S. § 3927) provides, in pertinent part:

§ 3927. *Theft by failure to make required disposition of funds received*

(a) *Offense defined.*—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of

theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as belonging to the victim at the time of the failure of the actor to make the required payment or disposition....

■ If the facts alleged in the instant case are proven, Appellee, by taking checks made payable to Esquire and depositing them in his own account, contrary to a known legal obligation, as Esquire's clerk, to deposit such checks in Esquire's account, clearly "obtain[ed] property subject to a known legal obligation" to make a specified disposition, and "intentionally deal[t] with the property obtained as his own and fail[ed] to make the required" disposition.

Section 4101 of the Crimes Code (18 P.S. § 4101) provides, in pertinent part:

§ 4101. *Forgery*

(a) *Offense defined.*—A person is guilty of forgery if, with intent to defraud or injure anyone, ..., the actor:

(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize the act, ...

■ If the facts alleged in the instant case are proven, Appellee, when he endorsed Esquire's name on the back of the checks, without Esquire's knowledge or authority, with the intent to defraud General Mills, Eastern Coupon Clearing House, certain manufacturers, and Esquire itself, clearly, "with intent to defraud ... anyone, ma[d]e ... [a] writing so that it purport[ed] to be the act of another who did not authorize that act."

■ Nowhere in the statutes defining the crimes with which Appellee was charged is monetary loss made an element of those crimes, and imposing a requirement that the Commonwealth show such a loss was improper.

Moreover, we think that the listing of Esquire as the owner of the stolen property in the informations charging theft, and the listing of Esquire as the party prejudiced in

the informations charging forgery, was acceptable under the circumstances, and, in any event, should not have been held fatal to the Commonwealth's case.

As to the theft charges, simply put, Esquire had a property interest or "right" in the checks issued in its name by virtue of the fact that it was the named payee on each of these forty-eight negotiable instruments that came into the possession or custody of its employee. Under the Uniform Commercial Code, 13 P.S. § 1101, et. seq., the checks were delivered (§ 1201), and transferred (§ 3201) to Esquire Drugs—the payee (through Appellee, its employee or servant), and Esquire Drugs thus became a "holder" (§ 1201). Under § 3201(a) of the U.C.C., Esquire Drugs, the holder-transferee, was thus vested with "such rights as the transferor has therein." Hence, it is clear that even though Esquire may not have had absolute title, Esquire, as transferee, still acquires the rights of the transferor. See, U.C.C., Comment No. 1 to § 3201.[3] Whether we regard Esquire as an involuntary bailee, or other holder of rights and therefore a holder of limited title or ownership in the checks, it is clear under the facts alleged that Esquire was deprived of its rights, title, or ownership interest in the property because of Appellee's actions.

While there is little authority on the point, the rule, uniformly accepted in this country when the matter has been raised, is that it is *not* essential, in theft cases of this kind, that the person named as owner have absolute title to the property involved. Ownership may be laid in one who has a qualified, special or constructive ownership only, although the ownership may also be laid in the actual owner, notwithstanding that another has qualified ownership, and it is not objectionable to lay ownership in the actual and qualified or special owners. 29A C.J.S. Embezzlement § 31a.

In *Commonwealth v. Wheeler*, 75 Pa.Superior Ct. 84 (1920), our Superior Court permitted (but did not require) an

---

3. Comment No. 2 to § 3201 indicates that the transfer of rights is not limited to transfers for value.

indictment for embezzlement to aver that checks were embezzled from a payor (who was the true owner of the funds in question, and the embezzler's client) rather than from the payee of the checks, a realty company of which the embezzler was treasurer. In *Commonwealth v. Shanklin,* 87 Pa.Superior Ct. 53 (1926), Superior Court emphasized that an indictment for fraudulent conversion or forgery had to allege to whom the property taken belonged. We can discover no other Pennsylvania cases related to the question at issue.[4] However, analagous cases from other jurisdictions are persuasive.

In *Tabbs v. State,* 268 A.2d 598, 10 Md.App. 177 (Court of Special Appeals of Maryland, 1970), the conviction of a police officer for felonious embezzlement of cash money from the city police commissioner was upheld. The police officer, in the course of his duties, took money from an undercover narcotics agent when he arrested the agent, and later converted the money. He was held to have necessarily received the money "for or in the name or on account of his master or employer" (the police commissioner) under Maryland's embezzlement statute although the money taken from the agent was to be used merely as evidence or only held for safekeeping. The Maryland Court held that its embezzlement statute did not require that ownership of the embezzled funds be in the master or employer, and that proof of any legal interest or special property in the money would suffice. See also, *Loker v. State,* 233 A.2d 342 at 357, 2 Md.App. 1 (Court of Special Appeals of Maryland, 1967), affd. 245 A.2d 814, 250 Md. 677, cert. den. 393 U.S. 1082, 89 S.Ct. 862, 21 L.Ed.2d 774 (1968); and see, *People v. Kagan,* 264 Cal.App.2d 648, 70 Cal.Rptr. 732 (Court of Appeal, 1968), where it was stated that the gist of the crime of embezzlement is "the appropriation to one's own use of

---

4. *Commonwealth v. Glass,* 199 Pa.Superior Ct. 542, 185 A.2d 811 (1962); and *Commonwealth v. Nichols,* 206 Pa.Superior Ct. 352, 213 A.2d 105 (1965), are not on point.

property delivered for devotion to a particular purpose other than one's own enjoyment of it." 70 Cal.Rptr. at 740.[5]

It has been held on numerous occasions that an employee who embezzles property which comes into his hands by virtue of his employment cannot escape criminal liability for embezzlement by a plea that legal title to the property is not in his employer. This rule was applied most recently in *State v. Boueri,* 99 Nev. 790, 672 P.2d 33 (1983), where a hotel employee arranged complimentary air fares for guests of his employer. Unused plane tickets were returned to a travel agent for refunds. Refund checks were made payable to cash and returned to the employee (who allegedly converted them) rather than being credited or paid directly to the hotel. The argument that the checks were not owned by the hotel was rejected since the employee was entrusted by his employer with power and authority to generate and possess his employer's funds, and the employee would not be heard to argue that title was in someone other than the employer. The same rule was applied in *State v. DuBois,* 98 P.2d 354, 98 Utah 234 (1940), where the court also considered that ordinarily "any general or special ownership or lawful possession is sufficient to sustain an allegation of ownership in embezzlement; and where general ownership is in one person and a special ownership is in another, ownership may be laid in either." 98 P.2d at 358. The Supreme Court of Utah also noted that where embezzlement by an employee is concerned, the "gist of the offense of embezzlement lies in the breach of the trust or fiduciary relationship existing by virtue of the employment." 98 P.2d at 358. The rule that an embezzler cannot plead that legal title in the property is *not* in his employer was set forth early in the case of *United States v. United States Brokerage and Trading Co.,* 262 F. 459 (S.D.N.Y., 1919), in an opinion written by District Judge Learned Hand.[6]

While we need not decide here whether an employee can be permitted to show *complete* lack of title in his employer

---

**5.** Other cases holding that only a limited title need be alleged are set forth at 29A C.J.S. Embezzlement § 31a.

**6.** For other cases see, *Dubois, supra,* and *Boueri, supra.*

as a defense to a charge of theft by unlawful taking, it is clear to us that Esquire Drugs had sufficient title or interest here so as to be named in the informations as the owner of the property stolen.

■ It is not clear why the redemption companies or manufacturers were not also listed on the informations charging Appellee with theft, as owners whose property was stolen. It is clear, however, that Appellee was not prejudiced by such omissions.

Section 3902 of the Crimes Code (18 P.S. § 3902) provides:

§ 3902. *Consolidation of theft offenses*

Conduct denominated theft in this chapter constitutes a single offense. An accusation of theft may be supported by evidence that it was committed in any manner that would be theft under this chapter, notwithstanding the specification of a different manner in the complaint or indictment, subject only to the power of the court to ensure fair trial by granting a continuance or other appropriate relief where the conduct of the defense would be prejudiced by lack of fair notice or by surprise.

Even if it could be reasonably argued that the redemption companies and manufacturers should also have been listed as owners whose property was stolen (and it does not appear to us that the argument is even colorable under § 3927), the failure to do so would not justify dismissal of the theft charges. If necessary, Appellee could have been treated, for example, as having been charged with theft by deception under § 3922 (as Appellee appears to concede; see p. 28 of Appellee's brief to this Court). Appellee cannot reasonably claim unfairness or prejudice here, and § 3902 was specifically made a part of the section of the Crimes Code dealing with theft and related offenses to avoid the types of technicalities that once distinguished larceny from embezzlement, and which have insensibly arisen herein.

Pennsylvania Rule of Criminal Procedure 229 provides:

Rule 229. *Amendment of Information*

> The court may allow an information to be amended when there is a defect in form, the description of the offense, the description of any person or any property or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

■ While we think that Appellee was properly charged in this case where the informations contained the statement that *Esquire's* property was stolen, the Commonwealth could have been freely permitted to amend under Rule 229 to add the names of additional owners since such amendment would not have charged an additional or different offense. It was error to dismiss the Commonwealth's charges without permitting the amendment.

■ As to the forgery charges, we, likewise, think that for the reasons set forth above, it was proper to state in the informations that Esquire was the person prejudiced. Esquire has property rights in these checks. See, above. Moreover, it was Esquire's name that was allegedly forged on checks made payable to Esquire. This alleged misuse of Esquire's name and endorsement would, in and of itself, constitute prejudice to Esquire. It is therefore not necessary to speculate about possible harm to Esquire's reputation, exposure to review by taxing authorities, or exposure to charges of fraud, which might well have occurred.

For the reasons set forth above, all of the charges against Appellee must be reinstated, and the matter remanded to the Court of Common Pleas of Philadelphia County for further proceedings not inconsistent with this opinion.

It is so ordered.

NIX, C.J., and ZAPPALA, J., file dissenting opinions.

NIX, Chief Justice, dissenting.

I dissent.

Unquestionably the conduct of appellee was in violation of our criminal statutes. However, as pointed out by Mr. Justice Zappala in his dissent, the information upon which the Commonwealth relied did not accurately set forth the offenses committed. It is clear that it was not the property of Esquire that was converted by appellee, since Esquire was not entitled to these refunds and therefore was not prejudiced in any way. The person or entity who may have sustained a loss was not identified nor called upon to assert that loss and the absence of appellee's authority to act on his or its behalf. I, therefore, would affirm the order of the Superior Court.

ZAPPALA, Justice, dissenting.

I find it necessary to write separately and express my great displeasure at the obstinacy of the Philadelphia prosecutor's office which once again prompts the majority to conduct an exercise in mental and legal gyrations and gymnastics in order to rescue a criminal information from invalidity. Instead of merely amending the informations handed down, the prosecutor chose to blithely pursue a conviction based on artlessly drafted, and thereby erroneous informations.

I again feel constrained to remind my brethren that it is not within our mandate to correct legal errors committed by the prosecutor, but only to review matters of alleged error and apply the law and duly promulgated rules to achieve a legally correct result. *See, Commonwealth v. Gordon,* 511 Pa. 481, 515 A.2d 558 (1986) (Zappala, J., dissenting); *Commonwealth v. Brown,* 506 Pa. 169, 484 A.2d 738 (1984) (Zappala, J., dissenting). In stretching the boundaries and interpretation of these cases and rules in order to achieve the "correct" result, we do nothing to promote consistency in our jurisprudence nor confidence in our legal system. The convoluted path traversed by the majority in reviewing the quashed informations does nothing to promote either goal.

124

Because of the unusual facts and circumstances of the instant case and because the decision of the Superior Court was rendered in an unreported memorandum opinion of no precedential value, there appears no compelling reason for this Court to have granted review in the first instance. Sadly, however, the Opinion of this Court, including its speculative "dabbling" in the law of commercial transactions, has the potential for affecting cases far beyond its parameters.

The Superior Court, in affirming the trial court's decision to quash the informations correctly held that such a decision should be reversed only where there has been a clear abuse of discretion, citing its decision in *Commonwealth v. Niemetz*, 282 Pa.Super. 431, 439, 422 A.2d 1369, 1373 (1980). After review of the record and consideration of the majority's Opinion, I cannot find a clear abuse of discretion on the part of the trial court and would affirm the Superior Court's Order on that basis. I therefore dissent.