HERB HALLMAN CHEVROLET, INC.,
a Nevada corporation; John Stanko,
Plaintiffs–Appellants,

v.

Dorothy NASH–HOLMES; Donald Coppa;
Karl Hall; Frank Landes; John J. Long;
Michael Neville; Washoe County, Defendants–Appellees.

Jerry Van Der Hoeven; James Bayus;
Stan Bondick; Craig Conrad; Tom
George; Ron Hall; John Julian; Judy
Limon; Dan Mahoney; Edward Matts;
Ron Sherk; Greg Steward; Alex Vargo;
Clifford Souza, Plaintiffs–Appellants,

v.

Donald Coppa, individually and in his official capacity as Assistant District Attorney for Washoe County; Dorothy Nash–Holmes, individually and in her official capacity as District Attorney for Washoe County; Frank D. Landes, individually and in his official capacity as Investigator with the Washoe County Office of the District Attorney; John Long, individually and in his official capacity as Investigator with the Washoe County Office of the District Attorney; Michael Neville, individually and in his official capacity as Investigator with the Washoe County Office of the District Attorney; County of Washoe, a political subdivision of the State of Nevada, Defendants–Appellees.

Jerry Van Der Hoeven; James Bayus;
Stan Bondick; Craig Conrad; Tom
George; Ron Hall; John Julian; Judy
Limon; Dan Mahoney; Edward Matts;
Ron Sherk; Greg Steward; Alex Vargo;
Clifford Souza, Plaintiffs–Appellants,

v.

Donald Coppa, individually and in his official capacity as Assistant District Attorney for Washoe County; Dorothy Nash–Holmes, individually and in her

official capacity as District Attorney for Washoe County; Frank D. Landes, individually and in his official capacity as Investigator with the Washoe County Office of the District Attorney; John Long, individually and in his official capacity as Investigator with the Washoe County Office of the District Attorney; Michael Neville, individually and in his official capacity as Investigator with the Washoe County Office of the District Attorney; County of Washoe, a political subdivision of the State of Nevada, Defendants–Appellees.

Herb Hallman Chevrolet, Inc., a Nevada
corporation; John Stanko,
Plaintiffs–Appellants,

v.

Dorothy Nash–Holmes; Donald Coppa;
Karl Hall; Frank Landes; John J. Long;
Michael Neville; Washoe County, Defendants–Appellees.

Nos. 97–15275, 97–15323, 97–16960 and 97–16976.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1999.

Decided March 3, 1999.

Before: SNEED, TASHIMA, and SILVERMAN, Circuit Judges.

SNEED, Circuit Judge:

Herb Hallman Chevrolet, Inc.-a Reno automobile dealership-its owner, John Stanko ("Stanko"), and employees (collectively "Hallman Chevrolet") appeal from a grant of summary judgment by Judge David Warner Hagen of the United States District Court for the District of Nevada, in a consolidated 42 U.S.C. § 1983 civil rights action alleging prosecutorial misconduct by Washoe County, three county prosecutors and three county investigators (collectively "Washoe prosecutors"). On appeal, Hallman Chevrolet argues that the Washoe prosecutors are not entitled to immunity from suit for deliberately omitting facts and making false statements in support of two search warrants and impaneling a Washoe County grand jury without probable cause. Hallman Chevrolet attributes these constitutional violations to the individual defendants and to Washoe County because, they contend, the Washoe prosecutors were acting pursuant to Washoe County policy. Finally, Hallman Chevrolet argues that the district court erred in awarding defamation-related attorneys' fees to the Washoe prosecutors.

We affirm the district court's ruling against Hallman Chevrolet on the merits, but reverse its award of attorneys' fees.

## I.

### BACKGROUND

In late December 1990, Rick Wells complained to the Reno Police Department that Hallman Chevrolet appropriated his $600 factory rebate, due on a new car purchase, by forging his signature on a rebate assignment form. Wells recounted his dealings with Hallman Chevrolet to police in a written statement, which follows in part:

On 10–14–90, I signed the Lease Agreement and took possession of the van. I was told on [10–13–90 or 10–14–90] or both of these dates that rebates were not being

Nathan Z. Dershowitz, Dershowitz & Eiger, New York, New York, for the plaintiffs-appellants.

Larry R. Hicks, McDonald Carano Wilson McCune Bergin Frankovich & Hicks, Reno, Nevada; Melanie Foster, Washoe County District Attorney, Reno, Nevada, for the defendants-appellees.

offered.... Later, I questioned [salesman] Ron Hall again as to rebate offerings and was told that there were none. I was told by Ron Hall and J.J. that I could purchase the van for $500 over cost regardless of the method of financing. I gave them a mercantile check in the amount of $4,000 to be held until 11–11–90.... I was told by J.J. and Ron Hall that leasing would save me $80 to $100 per month.... On 11–2–90, I went ... to my credit union ... [and] spoke with a loan officer who quoted a much lower rate than the lease.... On [ ] 11–6–90 ... my loan application [was] approved.

I then contacted [Hallman] Chevrolet ... and notified [them] that I had decided to purchase the vehicle for the $500 over invoice that we had agreed to.... I received a call back from Dan with a very hostile tone saying.... I had signed a [lease] contract and would be held to it. When I questioned him as to why I could not purchase as per our original agreement at $500 over invoice, he turned the phone over to Ron Hall who said he was going to lose a bonus check if I bought the vehicle and that I should "just bring the rig back". I was also threatened with legal action. Due to the hostile and abusive tone of our conversation, I ... [stopped] payment on the down payment check ... on 11–6–90.... On 11–9–90, I telephoned John Stenko [sic], one of the owners who said he had sent me a certified letter .... which he [read over the phone].... [H]e offered a price of $20,212, which I accepted over the phone.... I then went to the [dealership] to get a receipt and noticed a rebate list memo taped to the podium.... I decided first to get verification direct from Chevrolet....

Then on 12–23–90, I went to the dealership. Ron Hall was in the lot and I asked him what had happened to my $600 rebate. He said rebates weren't being offered on my vehicle, at which time I told him he was lying, that I had a letter [dated 12–11–90] from Chevrolet to prove it and they had stolen my money.... [General Sales Manager] Mr. Souza said I had signed over the rebate and I told him I wanted to see the paper. He got my file and showed

me.... I advised him that the signature was a forgery and that unless he wished to got to court, I wanted my money. He refused to offer the rebate and I advised both he and Ron Hall that I was going to pursue this and that somebody was going to jail.

On May 8, 1991, Wells underwent a polygraph examination at the Reno Police Department and the examiner concluded that Wells was speaking truthfully. On July 2, 1991, the county handwriting analyst determined that the signature in question "exhibits the characteristics of a 'simulated forgery.'" On July 19, 1991, police forwarded their report to the Washoe County District Attorney's Office where it was assigned to Assistant District Attorney Karl Hall ("A.D.A.Hall").

On November 27, 1991, District Attorney investigators ("D.A.investigators") confronted owner Stanko. In response to the D.A. investigators' accusation that Hallman Chevrolet forged Wells' signature on the rebate form, Stanko stated that Wells had authorized the dealership to reproduce his signature. In support of his claim, Stanko voluntarily produced two power of attorney forms purportedly signed by Wells and a list of rebates ("Rebate Recap Sheet") credited to the dealership. The D.A. investigators submitted the power of attorney forms to the county handwriting analyst who concluded that there was "no basis for identifying [Wells] as the writer." Investigators discovered that the forms, even if signed by Wells, did not authorize the dealership to reproduce his signature on other documents. Investigators returned to the dealership to question Stanko regarding the discrepancies, whereupon he angrily refused to cooperate.

D.A. investigators began to contact other customers listed on the Rebate Recap Sheet, including Daniel and Donna Pease (the "Peases"). The dealership received a $500 rebate from Chevrolet for the Peases' transaction, but the Peases apparently did not receive credit for the rebate. Although Daniel Pease confirmed that it was his signature on the rebate assignment form, neither he

nor his wife remembered salesman Hall mentioning a rebate.

At this point, D.A. investigators decided to seek a search warrant because they believed they had probable cause to suspect Hallman Chevrolet of criminal conduct. A.D.A. Hall drafted an application for the search warrant which a magistrate issued on January 23, 1992. Four days later, D.A. investigators executed the warrant and seized 151 transaction files.

In the week following the execution of the warrant, one current and two former Hallman Chevrolet employees voluntarily came forward to confirm dealership policies encouraging salesmen to engage in fraudulent and unfair business practices. They stated that it was dealership policy not to tell customers about rebates and to get them unknowingly to assign their rebates to the dealership.

D.A. investigators began to examine the sales files obtained in the first search. They contacted dozens more customers and learned that, in many cases, the dealership retained down-payments, trade-ins, and rebates without ever applying the credit to customers' leases to reduce their capitalized costs. They also discovered that the dealership had charged customers for extended warranties they specifically refused or never received. From February until mid-March 1992, D.A. investigators identified seventeen of the most clear and convincing instances of fraud and conducted taped interviews with those customers.

Washoe prosecutors obtained a second search warrant which they executed on March 27, 1992. With this warrant, they seized 1,700 transaction files. After reviewing the files and interviewing dozens of customers, investigators again selected the transactions containing the most convincing evidence of fraud and conducted taped interviews with those 35 customers.

The D.A. investigators also continued to interview former dealership employees. In April 1992, former employee William Dallman stated that he had observed salesmen forging names on rebate assignment documents and that it was common practice to add the cost of an extended warranty to the purchase price without informing the customer. He also described how the dealership falsified customer credit applications in order to obtain approval from banks for customer loans. Another former employee, Bobby Atkerson, stated that he once overheard three salesmen discussing the forgery of a customer's signature. When the discussion ended, Atkerson entered the room and observed a piece of paper with sixteen versions of customer Rick Wells' signature. Additionally, he confirmed that salesmen added warranties without customer consent and were instructed not to mention rebates.

Based on this and other evidence, Assistant District Attorney Donald Coppa ("A.D.A. Coppa") impaneled a Washoe County grand jury on July 8, 1992. Before presenting the evidence, A.D.A. Coppa told the grand jury that they were investigating the "business practices" of Hallman Chevrolet and its employees. In twenty sessions over the next year, the grand jury heard personal sworn testimony from seventy-seven witnesses—nearly all of whom had been interviewed prior to the proceedings—and received over 3,200 pages of documents and transcripts. On July 2, 1993, the grand jury returned an eighty-one count indictment, the largest in the history of the county, charging seventeen Hallman Chevrolet employees with 409 felony offenses. Trial was set for May 4, 1994. Just before trial, however, Deputy District Attorney Gary Hatlestad ("D.D.A. Hatlestad") voluntarily dismissed most of the charges because, according to him, A.D.A. Coppa had made a fundamental pleading error in the indictment by treating accessory suspects as principals. In a lengthy decision, Nevada state court Judge Whitehead dismissed the remaining charges with prejudice based on what he found to be egregious prosecutorial misconduct.

The Washoe prosecutors appealed the decision to the Nevada Supreme Court, but the newly elected D.A. dismissed that appeal before it was heard. Following the dismissal, Hallman Chevrolet filed this civil rights action in the United States District Court for the District of Nevada. The district court granted the Washoe prosecutors' motion for

summary judgment and awarded them fees for the defamation-plus litigation. Hallman Chevrolet now appeals. We affirm the district court's grant of summary judgment, but reverse its award of fees.

## II.

### STANDARDS OF REVIEW

■ We review de novo the district court's grant of summary judgment, *see Hervey v. Estes*, 65 F.3d 784, 788 (9th Cir.1995), and resolve all factual disputes in favor of Hallman Chevrolet, *see Knox v. Southwest Airlines*, 124 F.3d 1103, 1107 (9th Cir.1997). This Court also reviews de novo the district court's decision to afford public officials qualified or absolute immunity. *See Hervey*, 65 F.3d at 788. We review for abuse of discretion the district court's award of attorneys' fees to the Washoe prosecutors. *See Hensley v. Eckerhart*, 461 U.S. 424, 437, 103 S.Ct. 1933, 1941, 76 L.Ed.2d 40 (1983); *Oviatt v. Pearce*, 954 F.2d 1470, 1481 (9th Cir.1992).

## III.

### DISCUSSION

A. *Investigative Immunity*

■ Hallman Chevrolet first contends that the Washoe prosecutors are not immune from suit for their investigative activities. We disagree. A prosecutor may only shield his investigative work with qualified immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 113 S.Ct. 2606, 2615, 125 L.Ed.2d 209 (1993). The qualified immunity question turns on the "objective legal reasonableness" of the action. *Lombardi v. City of El Cajon*, 117 F.3d 1117, 1125 n. 5 (9th Cir.1997) (citing *Anderson v. Creighton*, 483 U.S. 635, 638–39, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987)). It is not objectively reasonable for a prosecutor deliberately or recklessly to misstate or omit facts material to the existence of probable cause. *See id.* at 1126.

■ Hallman Chevrolet asserts that the Washoe prosecutors misrepresented material facts in affidavits supporting two search warrant applications.[1] Hallman Chevrolet claims that customer Wells received credit for his rebate and that the Washoe prosecutors misrepresented that fact. The record, however, suggests otherwise. More importantly, the Washoe prosecutors were reasonable to believe otherwise. During his polygraph examination, Wells made a sworn statement, which the polygraph analyst found to be truthful, that he never received his rebate. Moreover, the county handwriting analyst determined that Wells' signature was a probable forgery. The Washoe prosecutors were also aware that owner Stanko and several Hallman Chevrolet employees had given different versions of the events to Wells, the police and D.A. investigators. Furthermore, despite numerous opportunities, Hallman Chevrolet failed to produce any documentary evidence or reliable testimony refuting Wells' version of the events. Hallman Chevrolet next argues that the Washoe prosecutors deliberately misled the magistrate by calling the signatures in question "confirmed" forgeries. We disagree. These signatures clearly exhibit the signs of forgery. According to the Washoe County handwriting expert, they differed from Wells' known writing style and there was "no basis for identifying [Wells] as the writer."

■ Hallman Chevrolet also asserts that the Washoe prosecutors deliberately omitted material facts in their affidavits. To show that an omission is material, "[t]he plaintiff must establish that the remaining information in the affidavit is insufficient to establish probable cause." *Hervey*, 65 F.3d at 789. The standard for determining probable cause under Nevada law is whether there is "slight, even marginal, evidence" to support the charge. *State v. Boueri*, 99 Nev. 790, 672 P.2d 33, 36 (1983).

Although the Washoe prosecutors did omit facts from their affidavits, none of these facts was material. For example, Washoe prosecutors omitted the fact that the Department of Motor Vehicles ("DMV") had made an inquiry and determined that Hallman Chev-

1. An affiant, Reno Police Detective Robert McDonald, was not a named defendant, but according to Hallman Chevrolet, the affidavit itself was drafted by A.D.A. Hall. For purposes of summary judgment, that assertion is assumed true.

rolet did not owe any rebate money to Wells. This fact was, however, immaterial because the DMV investigator made his determination without knowing of the alleged forgery. The DMV investigator later acknowledged that he would have reopened the Wells investigation had he known of the forgery. In addition, Washoe prosecutors neglected to state that Hallman Chevrolet voluntarily turned over Wells' file and that an investigation of twelve other customers revealed only that one couple did not recall being told of their rebate. When viewed in context, however, these facts do not suggest Hallman Chevrolet's innocence. Despite Hallman Chevrolet's initial cooperation, owner Stanko quickly refused voluntarily to produce documents or otherwise assist authorities in the investigation. Moreover, the same salesman who apparently defrauded Wells was also involved in the other suspect transaction.

Washoe prosecutors did not disclose to the magistrate that Wells had been convicted earlier of bank fraud involving a vehicle loan and had a possible motive to allege fraud. These facts might bear on Wells' credibility. However, the Washoe prosecutors corroborated Wells' story by administering a polygraph examination, submitting documents to a handwriting specialist, and taking the sworn statement of another customer who had a similar experience with the same salesman. Thus, a neutral and detached magistrate would have found probable cause even if the Washoe prosecutors had included these unfavorable facts.

In sum, the Washoe prosecutors did not intentionally omit or misrepresent any facts that were material to the finding of probable cause. Nor did they act otherwise to destroy their investigative immunity.

### B. *Prosecutorial Immunity*

 Hallman Chevrolet next contends that the Washoe prosecutors are not entitled to the protection of absolute immunity for their activities after the initiation of grand jury proceedings because they functioned as investigators rather than advocates. We reject this contention.

 A prosecutor performing an advocate's role is an officer of the court entitled to absolute immunity. *See Buckley,* 509 U.S. at 273, 113 S.Ct. at 2615, 125 L.Ed.2d 209. A prosecutor's acts in the course of his role as an advocate "include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Id.* The Supreme Court has recognized that "prosecutors are absolutely immune from liability under § 1983 for their conduct before grand juries." *Burns v. Reed,* 500 U.S. 478, 490 n. 6, 111 S.Ct. 1934, 1941 n. 6, 114 L.Ed.2d 547 (1991).

The Washoe prosecutors functioned as advocates in the grand jury proceedings. By the time the grand jury was impaneled, the Washoe prosecutors had completed a vast majority of the investigation and, prior to the impanelment, virtually every witness had been interviewed and every exhibit compiled. After A.D.A. Coppa impaneled the grand jury, he sought an indictment primarily by presenting to the grand jury the witnesses he had already interviewed and the evidence he had previously gathered.

 Nonetheless, Hallman Chevrolet insists that the Washoe prosecutors are not entitled to the protection of absolute immunity because they lacked probable cause to impanel the grand jury. Under federal law, "[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Buckley,* 509 U.S. at 274, 113 S.Ct. at 2616, 125 L.Ed.2d 209. The degree of strength required to establish probable cause is determined by state law. *Berg v. Leason,* 32 F.3d 422, 425 (9th Cir.1994).

The Nevada standard for determining probable cause is whether there is "slight, even marginal, evidence" to support the charge. *Boueri,* 672 P.2d at 36. "The state need only present enough evidence to create a reasonable inference that the accused committed the offense with which he or she is charged." *Id.; accord LaPena v. Sheriff,* 91 Nev. 692, 541 P.2d 907 (1975). In *Boueri,* the defendant was accused of embezzling money from his employer, Caesar's Palace,

where he worked as vice-president in charge of hosting affluent guests. 672 P.2d at 36. As part of his duty to induce such persons to visit Caesar's, defendant would arrange complimentary air fare in the name of guests through a local travel agency. *See id.* According to Caesar's policy, when defendant sought refunds from the travel agency for unused tickets, checks were to be made out directly to Caesar's. *See id.* Caesar's policy did not authorize defendant to receive cash refunds for unused tickets. *See id.* At the grand jury hearing, however, the travel agent stated that the agency usually issued checks to the order of cash and delivered them to defendant. *See id.* Yet, neither Caesar's nor its guests ever received the money. *See id.* The court's "logical inference" from these facts was sufficient to establish probable cause that defendant had embezzled the money. *See id.*

In the present case, the Washoe prosecutors had probable cause exceeding that recognized in *Boueri.* After a year-long investigation, the Washoe prosecutors had compiled hundreds of supporting documents and interviewed dozens of witnesses, including former employees and customers. As a result of this investigation, the Washoe prosecutors had ample and convincing evidence that Hallman Chevrolet employees had forged customers' signatures, withheld rebates, retained customer down-payments intended to reduce principal balances and made material misrepresentations to customers.

Nonetheless, Hallman Chevrolet contends that probable cause did not exist at the time the grand jury was impaneled. First, it argues that D.D.A. Hatlestad admitted that "there was not even 'slight or marginal evidence'" to support any of the charges and that admission is controlling. Second, it argues that the Nevada state court ruling that Washoe prosecutors did not have probable cause is controlling. We reject both arguments.

First, D.D.A. Hatlestad did not admit that the Washoe prosecutors acted without "slight or marginal evidence." He actually stated that "the counts were not, *as pleaded,*[2] sup-

ported by slight or marginal evidence.... [But] an arresting officer, acting either with or without an arrest warrant, would have had *probable cause to believe that each of the named defendants had committed crimes* under Nevada law and could have arrested them accordingly" (emphasis added). Contrary to Hallman Chevrolet's position, D.D.A. Hatlestad's statement actually affirms the existence of probable cause. Nonetheless, we are not bound by his characterization of the facts.

Second, we are not precluded by the Nevada state court ruling on the question of whether there was probable cause because the Nevada state court did not reach this issue. It was neither "actually litigated" nor "necessarily decided" in the state court. Under Nevada law, collateral estoppel applies when an issue is "actually litigated" and "necessarily determined" in a prior proceeding, and the parties in the two proceedings are the same or in privity. *See Marine Midland Bank v. Monroe,* 104 Nev. 307, 756 P.2d 1193, 1194 (1988). Thus, we reject Hallman Chevrolet's preclusion argument.

### C. *Alleged Unconstitutional County Policy*

Hallman Chevrolet next claims that A.D.A. Coppa's actions served as a cognizable basis for the imposition of liability against Washoe County because he exercised policymaking authority in violation of Hallman Chevrolet's constitutional rights.

"[M]unicipal liability under § 1983 attaches where-and only where-a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986). "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Id.* at 477, 106 S.Ct. at 1297, 89 L.Ed.2d 452 (quoting *Monell v. New York City Dep't of Soc. Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)).

---

2. According to the Washoe prosecutors, A.D.A. Coppa made a fundamental pleading error in drafting the indictment by failing to identify conduct which would cause an accessory to be responsible as a principal.

The Washoe prosecutors, including A.D.A. Coppa, performed their duties in good faith-properly establishing probable cause in seeking both search warrants, convening the grand jury and making arrests. In light of the fact that the Washoe prosecutors did not violate Hallman Chevrolet's constitutional rights, we need not address the question of whether A.D.A. Coppa was a policymaker for the purpose of attributing his actions to Washoe County.

### D. *Attorneys' Fees for Defamation-plus Claim*

 Hallman Chevrolet also claims that the district court erred in awarding attorneys' fees to the Washoe prosecutors for the so-called "defamation-plus"[3] claim. We agree. District courts are authorized to award attorneys' fees to a prevailing defendant in civil rights cases only in those exceptional cases when the action is unreasonable, frivolous, meritless, or without foundation, or when the plaintiff continues to litigate after it clearly becomes so. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 422, 98 S.Ct. 694, 701, 54 L.Ed.2d 648 (1978) (interpreting the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988); *see also Franceschi v. Schwartz*, 57 F.3d 828, 832 (9th Cir.1995).

 In this case, Hallman Chevrolet's claim for defamation-plus was not frivolous. There are two ways to state a cognizable § 1983 claim for defamation-plus: (1) allege that the injury to reputation was *inflicted in connection* with a federally protected right; or (2) allege that the injury to reputation *caused the denial* of a federally protected right. *See Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir.1991). Hallman Chevrolet asserted a defamation-plus claim under each of these methods.

#### 1. *Injury in connection with a federally protected right.*

First, Hallman Chevrolet argued that the Washoe prosecutors injured its reputation in connection with the deprivation of its federally protected right to be free from unlawful searches, seizures and arrests. Hallman Chevrolet adequately alleged all of the elements of defamation-plus, including the allegation that the Washoe prosecutors made defamatory comments in connection with indictments and arrests for which there was no probable cause. Even though the district court eventually granted summary judgment on the issue of probable cause, it was reasonable for Hallman Chevrolet to believe that the defamation-plus claim had merit. The claim had survived an earlier motion to dismiss which this Court recognizes as evidence that the claim is not without merit. *See Jensen v. Stangel*, 762 F.2d 815, 818 (9th Cir.1985).

Moreover, the state court order implied that the facts would support a defamation-plus claim against the Washoe prosecutors. We draw attention to the state court order not to endorse its holding, but instead to demonstrate the reasonableness of Hallman Chevrolet's defamation-plus claim. According to the state court, the Washoe prosecutors disregarded Nevada state law throughout the grand jury process. In an excoriating judgment, Nevada District Judge Jerry Whitehead stated:

> The undersigned has never before witnessed a criminal indictment in a serious case where the procedures that have been established to insure fairness were so disregarded and ignored. The Court is shocked that [Hallman Chevrolet has] been subjected to criminal charges, public vilification, and enormous economic loss based upon a proceeding so flawed and unfair. Our system was designed to avoid such abuses of official power, but the system failed [Hallman Chevrolet] in this case.

*Nevada v. Bayus*, Order, No. CR93–1259 at 4–5 (Nevada 2nd Dist., April 26, 1994). The state court order clearly influenced Hallman Chevrolet. In its opening brief, Hallman Chevrolet quotes a section of the state court order titled "Prejudicial Pre–Trial Publicity

---

**3.** A § 1983 action requires that a claimant plead more than mere injury to reputation. The injury to reputation must be joined with an injury to a liberty or property interest protected by the due process clause of the Fourteenth Amendment.

*See Paul v. Davis*, 424 U.S. 693, 703, 96 S.Ct. 1155, 1161, 47 L.Ed.2d 405 (1976); *see also Cooper v. Dupnik*, 924 F.2d 1520, 1532 (9th Cir. 1991) (citation omitted). Hence, the label "defamation-plus."

By The District Attorney" which states that the District Attorney made comments with the "clear intent" to "improperly influence" the court and the jury. In light of the state court order and the defamation-plus claim's survival of an earlier motion to dismiss, it is reasonable to assume that Hallman Chevrolet genuinely disputed the district court's conclusion and continued to litigate because it felt compelled to preserve the separate defamation-plus issue for appeal.

2. *Injury causing denial of a federally protected right.*

In its second claim for defamation-plus, Hallman Chevrolet contended that the Washoe prosecutors' defamatory statements deprived it of business goodwill, a state property right that is afforded constitutional protection. In holding this claim to be frivolous, the district court stated that "nothing in [Hallman Chevrolet's] papers" makes the showing that business goodwill is a property right protected under Nevada state law and that a "mere injury either to reputation or business goodwill is insufficient to support a defamation-plus § 1983 claim, *unless these are shown under State law to be legally protected interests, rather than merely the basis for tort claims.*" (emphasis added).

The district court, however, apparently overlooked the relevant portion of Hallman Chevrolet's papers. In fact, Hallman Chevrolet cited specific cases[4] for the principle that business goodwill is a protected property right in Nevada. Despite the complexity of the law in this area, Hallman Chevrolet made a genuine attempt to assert its claim under the law of Nevada. Moreover, Hallman Chevrolet relied almost entirely on the earlier state court judgment which strongly suggested that the Washoe prosecutors had violated Hallman Chevrolet's constitutional rights. Under these circumstances, we hold that it was error to find the defamation-plus claim unreasonable or frivolous.

For these reasons and in light of the well-established rule that a defendant should only receive an award of attorneys' fees in extreme cases, we hold that the district court abused its discretion in making such an award. Each party shall bear its, his or her own costs on appeal.

AFFIRMED IN PART, REVERSED IN PART.

---

4. In their papers opposing the motion for summary judgment, Hallman Chevrolet cited *Ford v. Ford*, 105 Nev. 672, 782 P.2d 1304, 1308 (1989) and *Zale–Las Vegas v. Bulova Watch*, 80 Nev. 483, 396 P.2d 683, 689 (1964).