545 A.2d 975

Merle Walters and Patricia Walters, his wife *v.* Mark W. Kamppi et al. National Fuel Gas Supply Corporation, Appellant.

Anna C. Hill, Administratrix of the Estate of Joseph A. Hill, deceased, Anna C. Hill, in her own right, and Anna C. Hill, as parent and natural guardian of Joann L. Hill and Lucille A. Hill, minors *v.* Mark W. Kamppi et al. National Fuel Gas Supply Corporation, Appellant.

Argued May 25, 1988, before Judges MACPHAIL and COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Mark E. Mioduszewski, Knox, Graham, McLaughlin, Gornall and Sennett, Inc.,* for appellant

*Ted G. Miller, Gifford, Lay, Johnson & Ridge,* for appellees, Merle Walters and Patricia Walters, his wife, and Anna C. Hill.

*John M. Wolford, MacDonald, Illig, Jones & Britton,* for appellees, Mark W. Kamppi and Avonia Farms, Inc.

*Brian H. Baxter,* Senior Deputy Attorney General, with him, *Mark E. Garber,* Chief, Tort Litigation Unit, *Gregory R. Neuhauser,* Senior Deputy Attorney General, and *LeRoy S. Zimmerman,* Attorney General, for Appellee, Department of Transportation.

OPINION BY JUDGE MACPHAIL, August 11, 1988:

Appellant National Fuel Gas Supply Corporation (NFG) appeals an order of the Erie County Court of Common Pleas which denied NFG's petition to inter-

vene in actions filed by Merle D. and Patricia Walters and Anna C. Hill in that court. For the reasons set forth below, we affirm the trial court's order.

The actions below arose from an August 26, 1985 motor vehicle accident which resulted in the death of Joseph Hill and serious injuries to Merle Walters. At the time of the collision, Mr. Hill was operating a truck owned by NFG in which Mr. Walters was a passenger. As stipulated by the parties, both were employees of NFG acting within the scope of their employment at the time of the accident.[1] The NFG truck was struck by a truck owned by Avonia Farms, Inc. and operated by Mark W. Kamppi.

As a result of the accident, NFG paid workmen's compensation benefits in the form of medical and wage loss benefits to Mr. Walters, and funeral expenses and death benefits on behalf of Mr. Hill.

Suits were commenced in the trial court by Mr. and Mrs. Walters and Mrs. Hill[2] on January 12, 1987 and November 25, 1986, respectively. The complaints alleged negligence on the part of Mr. Kamppi, Avonia Farms, the Pennsylvania Department of Transportation (DOT) and Winters and Flemming, Inc., a DOT subcontractor. NFG filed petitions to intervene in both actions as party-plaintiff or use-plaintiff seeking to establish a right of subrogation, reimbursement and/or set-off by reason of the workmen's compensation benefits paid against any sums payable to plaintiffs as a result of the suit. NFG also sought a declaration that the Pennsylvania Motor Vehicle Financial Responsibility Law (Financial Responsibility Law), 75 Pa. C. S. §§1701-1798, is in whole or in part unconstitutional.

---

[1] *See* Original Record Items 11-13.

[2] Mrs. Hill filed suit in her own right, as administratrix of her husband's estate, and as parent and natural guardian of Joann L. and Lucille A. Hill.

In an opinion and order filed September 3, 1987, the trial court, per Judge JIULIANTE, denied NFG's petitions to intervene in both actions. Judge JIULIANTE concluded that NFG was not entitled to subrogation, pursuant to Section 1720 of the Financial Responsibility Law, 75 Pa. C. S. §1720, and that this section was not unconstitutional. NFG subsequently filed a petition for reconsideration which was granted on September 18, 1987. On November 9, 1987, Judge JIULIANTE affirmed the September 3, 1987 opinion and order denied NFG's request for reconsideration on the merits. NFG filed appeals in both actions and, on January 26, 1988, the appeals were consolidated for our disposition.[3]

NFG raises three issues before this Court: 1) whether the Financial Responsibility Law deprives an employer of a right of subrogation for workmen's compensation benefits paid for injuries sustained in a job-related automobile accident; 2) whether the Financial Responsibility Law, if so interpreted, is unconstitutional; and 3) whether the Financial Responsibility Law precludes subrogation against a tortfeasor whose liability does not arise out of the maintenance or use of a motor vehicle.

NFG's first argument is that the Financial Responsibility Law should not be construed to preclude a right of subrogation to a payor of workmen's compensation benefits. Section 1720 of the Financial Responsibility Law provides as follows:

---

[3] We note that generally an order denying a petition to intervene is not appealable unless "the practical consequence of the order is to deny the petitioner relief to which he is entitled and which he can secure in no other way." *Maginley v. Robert J. Elliott, Inc.,* 345 Pa. Superior Ct. 582, 583, 498 A.2d 977, 979 (1985). Our jurisdiction over the instant matter, however, was resolved in a March 29, 1988 order of this Court denying Mr. and Mrs. Walters' and Mrs. Hill's joint application to quash the appeal as from an interlocutory order.

> In actions arising out of the maintenance or use of a motor vehicle, *there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits,* benefits available under section 1711 (relating to required benefits), 1712 (relating to availability of benefits) or 1715 (relating to availability of adequate limits) or benefits in lieu thereof paid or payable under 1719 (relating to coordination of benefits).

75 Pa. C. S. §1720 (emphasis added). We cannot accept NFG's claim that any interpretation of this provision as barring subrogation for workmen's compensation benefits would be erroneous.

"The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." Section 1921(a) of the Statutory Construction Act of 1972 (Act), 1 Pa. C. S. §1921(a). However, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." Section 1921(b) of the Act, 1 Pa. C. S. §1921(b). Our Supreme Court has stated:

> It is fundamental that in ascertaining the legislature's intent, the plain words of its laws may not be ignored. A court may not alter, under the guise of interpretation, the express language and intent of the legislature. Thus, where the words of a statute are clear and free from ambiguity, a court may go no further to determine legislative intent. It is only when the words of the statute are not explicit that the intention of the legislature may be ascertained by considering other means of statutory interpretation or construction.

*Barasch v. Pennsylvania Public Utility Commission,* 516 Pa. 142, 156, 532 A.2d 325, 331-332 (1987) (citations

omitted), *appeal docketed,* 108 S. Ct. 1105 (U.S. March 7, 1988) (No. 87-1160).

In the case *sub judice,* NFG asks us to look beyond the plain meaning of Section 1720 to determine the legislature's intention in enacting the Financial Responsibility Law. According to NFG, one of the primary motivating factors of the legislature in repealing the Pennsylvania No-Fault Motor Vehicle Insurance Act (No-Fault Act)[4] and enacting the Financial Responsibility Law, was to curb the rising cost of motor vehicle insurance. NFG posits that under the No-Fault Act, a victim of a motor vehicle accident was able to obtain a "double recovery" from various sources, including workmen's compensation. Likewise, according to NFG, Section 1720 of the Financial Responsibility Law could permit a "double recovery" by disallowing subrogation for workmen's compensation benefits. NFG argues that when the legislature repealed the No-Fault Act in an attempt to cut costs, it could not have intended to enact a provision in the new Financial Responsibility Law which would also allow a "double recovery."

The interpretation of Section 1720 which NFG urges upon us would permit the provider of first-party benefits (here, NFG or its workmen's compensation carrier) to be reimbursed for benefits it has paid to the extent those benefits exceed the amount of required benefits under Section 1711 of the Financial Responsibility Law, 75 Pa. C. S. §1711.[5] Section 1720, however, plainly prohibits "subrogation or reimbursement from a claimant's tort recovery with respect to workers'

---

[4] Act of July 19, 1974, P.L. 489, *as amended,* formerly 40 P.S. §§1009.101-1009.701, repealed by the Act of February 12, 1984, P.L. 26, effective October 1, 1984.

[5] Under Section 1711, an insurer must supply coverage providing medical benefits of $10,000, income loss benefits up to a maximum of $5,000 and a funeral benefit of $1,500.

compensation benefits." We find these words to be clear and free from all ambiguity and, therefore, we decline to delve into the intent of the legislature in enacting the Financial Responsibility Law.

NFG argues secondly that if Section 1720 of the Financial Responsibility Law is applied as it reads, *i.e.,* to prohibit subrogation for workmen's compensation benefits in excess of benefits required under Section 1711, then Section 1720 is violative of due process and equal protection and is therefore unconstitutional. As noted by the trial court, the parties agree that economic legislation such as the Financial Responsibility Law will withstand a constitutional challenge as long as it is reasonable and bears a real and substantial relation to the object of the legislation. *See Hayes v. Erie Insurance Exchange,* 493 Pa. 150, 425 A.2d 419 (1981).

We are free to presume that in enacting legislation our General Assembly does not intend to violate either the Constitution of the United States or of this Commonwealth. Section 1922(3) of the Act, 1 Pa. C. S. §1922(3). As our Supreme Court has stated:

> The strong presumption of constitutionality enjoyed by acts of the General Assembly and the heavy burden of persuasion on the party challenging an act have been so often stated as to now be axiomatic. Legislation will not be invalidated unless it clearly, palpably, and plainly violates the Constitution, and any doubts are to be resolved in favor of a finding of constitutionality.

*Pennsylvania Liquor Control Board v. Spa Athletic Club,* 506 Pa. 364, 370, 485 A.2d 732, 735 (1984). *See also Cloonan v. Thornburgh,* 103 Pa. Commonwealth Ct. 1, 519 A.2d 1040 (1986).

NFG claims that the potential "double recovery" resulting from the prohibition against subrogation for

workmen's compensation benefits bears no relation to the purpose of the legislature in repealing the No-Fault Act and in enacting the Financial Responsibility Law. Further, according to NFG, workmen's compensation carriers paying benefits for injuries or death arising out of automobile accidents are treated differently both from those carriers paying benefits for injuries not related to motor vehicle accidents and automobile insurance carriers paying first-party benefits for motor vehicle accidents.

The trial court concluded that Section 1720 does bear a rational relation to the purpose of the Financial Responsibility Law "to provide prompt and complete relief for motor vehicle accident victims." As noted by Judge JIULIANTE, a victim who suffers damages in excess of his required benefit coverage will not receive double recovery of wage loss and medical benefits in a tort judgment if his coverage is limited to the minimum required under Section 1711. Moreover, there would be no double recovery of these benefits under the Catastrophic Loss (CAT) Fund because the Fund does not pay wage loss benefits and has only secondary responsibility for medical expenses in excess of $100,000.00.[6] Judge JIULIANTE concluded:

> It becomes apparent, then, that the victim described herein may not only fail to receive a windfall but just as likely, may receive less than full compensation for his losses. The injured victim who is forced, through subrogation, to turn over to his workmen's compensation source funds he has recovered from a tortfeasor may end up realizing nothing for his non-economic losses. The elimination of subrogation, thus,

---

[6] *See* Section 1766 of the Financial Responsibility Law, 75 Pa. C. S. §1766.

furthers the goal of providing *complete* compensation to the innocent victim of a motor vehicle accident.

Slip op. at 7 (emphasis in original).

We also reject NFG's claim that the application of Section 1720 as a bar to subrogation denies it equal protection of the law and we agree with the trial court that any different treatment afforded workmen's compensation carriers under Section 1720 bears a rational relation to the purpose of the Financial Responsibility Law. An employee injured in a job-related motor vehicle accident may be more in need of workmen's compensation benefits than in any other on-the-job injury. Section 1720 of the Financial Responsibility Law defines "financial responsibility" as the ability to respond in damages for liability in the amount of $15,000 for injury to one person in one accident and $30,000 for two or more injured persons. A tortfeasor, therefore, may not be able to adequately compensate an accident victim. With regard to NFG's distinction between workmen's compensation carriers and automobile insurance carriers, we note that under Section 1720, neither the workmen's compensation carrier nor the automobile insurance carrier providing required or other available benefits has any subrogation rights.

Section 1720, we conclude, bears a real and substantial relation to the purpose of providing complete insurance coverage to the Commonwealth's motorists. Because NFG has not proved that Section 1720 "clearly, palpably, and plainly" violates the Constitution, we will uphold that section.

NFG's final argument is that Section 1720 does not preclude subrogation as to any recovery from DOT or Winters and Flemming based on the theories of liability asserted against these defendants. Section 1720 provides that there shall be no right of subrogation or reim-

bursement from a claimant's tort recovery with respect to workmen's compensation benefits *"[i]n actions arising out of the maintenance or use of a motor vehicle."*

NFG's complaints in the actions below alleged that DOT was negligent in failing to maintain the portion of the roadway on which the accident occurred; in allowing the road surface to contain a substance ("fog seal") which created a dangerous and hazardous slippery condition; in failing to remove the substance or to repair the surface when DOT or its agents should have known of the danger; in failing to adequately supervise the paving of the road; in failing to adequately inspect the materials used in the paving; and in selecting defendant Winters and Flemming to perform paving, repaving and/or treating of the road surface when it should have known that Winters and Flemming would not adequately perform. The negligence of Winters and Flemming was alleged to consist of, *inter alia,* paving, repaving and treating the portion of roadway pursuant to inadequate plans, designs, and specifications; using improper materials in paving, repaving and treating the surface; applying these materials in a manner and under conditions which caused the surface to be slippery, unsafe and hazardous; failing to use competent and able workmen; and failing to perform in accordance with plans, designs and specifications of DOT.

We must reject NFG's claim that because these allegations do not arise from the maintenance or use *of a motor vehicle,* the bar to subrogation contained in Section 1720 is inapplicable to any recovery obtained from DOT or Winters and Flemming. The underlying action clearly arose from the use of a motor vehicle and we agree with the trial court that the theory of liability asserted against each defendant does not affect the nature of the action.

In conclusion, we hold that Section 1720 of the Financial Responsibility Law bars NFG's right to subrogation for workmen's compensation benefits paid to Mr. Walters and on behalf of Mr. Hill, from any recovery obtained against any of the named defendants below, including DOT and Winters and Flemming, Inc.

Order affirmed.

### ORDER

The orders of the Erie County Court of Common Pleas denying National Fuel Gas Supply Corporation's petitions to intervene in the above-captioned proceeding are affirmed.