654 A.2d 1049

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Susan H. MORRISSEY, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1994.

Decided Jan. 18, 1995.

Rolf Louis Patberg, Joseph M. Ludwig, Ludwig, Curran & Patberg, Pittsburgh, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Kemal A. Mericli, Asst. Dist. Atty., Thomas N. Farrell, Asst. Dist. Atty., for appellee.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION OF THE COURT

PAPADAKOS, Justice.

Appellant, Susan H. Morrissey, was convicted in the Allegheny County Court of Common Pleas of theft by failure to make required disposition of funds received,[1] and receiving stolen property.[2] Appellant was sentenced to a term of imprisonment of three (3) to twenty-three (23) months and ordered to pay restitution into an escrow fund. On appeal to the Superior Court, Appellant's judgment of sentence was affirmed in an unreported memorandum opinion.

We accepted further review to consider whether the Commonwealth established the elements of the crime of theft by failure to make required disposition of funds received and receiving stolen property. Since we agree with Appellant that the Commonwealth has not met its burden in this case, we reverse the order of the Superior Court and remand for Appellant's discharge.

On November 25, 1986, in the course of his employment, Appellant's husband, John M. Morrissey, was involved in a head-on auto accident in West Virginia. Mr. Morrissey suffered numerous injuries and accrued substantial medical bills in addition to missing over two months of work. He collected

1. § 3927 of the 1972 Crimes Code, 18 Pa.C.S. § 3927.
2. § 3925 of the 1972 Crimes Code, 18 Pa.C.S. § 3925.

$20,466.07 in workmen's compensation benefits from Trans America, his employer's workmen's compensation carrier, pursuant to the Pennsylvania Workmen's Compensation Act.[3]

The driver of the other vehicle was also within the scope of his employment at the time of the accident. That driver was primarily insured by Nationwide Insurance Company (Nationwide) for a maximum of $25,000. His employer's insurance was issued by State Farm Insurance Company (State Farm) which contacted Mr. Morrissey concerning a settlement for the injuries sustained as a result of the accident. In April, 1987, Trans America notified the parties that it possibly possessed a subrogation lien against any settlement made with State Farm on account of the workmen's compensation payments made to Mr. Morrissey.

On August 19, 1987, Mr. Morrissey and Appellant signed a release with State Farm in the amount of $90,000, minus the $25,000 paid by the Nationwide policy. The couple received two bank drafts on that date. The first was issued in the amount of $44,533.93 and named John M. Morrissey and Sue Helen Morrissey as payees. Pursuant to the notice received from Trans America, State Farm mistakenly believed that Trans America had a valid subrogation lien. As a result, the second draft, in the amount of $20,466.07, was made payable to John Morrissey, Sue Helen Morrissey and Trans America and is the document which serves as the basis for the criminal charges against Appellant.

Before depositing the second draft, Appellant testified that she contacted Trans America to verify if it had any rights to the check proceeds. For fear that the draft would become outdated, Appellant contacted Robin Williams, a supervisor at Trans America in late September or early October 1987. Appellant was informed by Ms. Williams that she was not authorized to make a decision concerning the validity of Trans America's subrogation lien but that she would discuss the case

3. Act of June 2, 1915, P.L. 736 (codified as amended at 77 P.S. §§ 1 et seq.).

6

with her own supervisor and Trans America's attorneys to determine their rights to subrogation.

Then, according to phone records, Appellant contacted Ms. Williams at 9:36 a.m., on November 12, 1987. Ms. Williams allegedly told Appellant to send the check to her at Trans America via Federal Express and that she would endorse it. Records indicate that the check was sent at 11:33 a.m. on November 12, 1987. Subsequently, Appellant phoned Ms. Williams at 3:53 p.m. on November 12, 1987, to inform her that the draft had been forwarded to her. On November 16, 1987, the draft was returned to Appellant and Mr. Morrissey, with the signature of Robin Williams on the reverse, and was then deposited into their checking account at Union National Bank.

Almost two years later, on August 24, 1989, at the request of Trans America, Appellant and Mr. Morrissey were charged with theft by failure to make required disposition of funds received, receiving stolen property, forgery, and criminal conspiracy. A Motion to Dismiss was filed in which Appellant asserted that Trans America had no interest in, nor did it have a subrogation lien, on the check issued. In support of her argument, Appellant cited the Pennsylvania Motor Vehicle Financial Responsibility Law and related case law.[4] In an opinion dated March 19, 1990, in support of the denial of Appellant's Motion to Dismiss, the Honorable Jeffrey Manning, Judge of the Court of Common Pleas of Allegheny County ruled:

There appears to be a significant conflict between the statutes passed by our Legislature affecting Worker's Compensation, ... however, in this *criminal* matter, the Court need not distinguish between the legal effect of said stat-

4. As Appellant's brief indicates, Appellant filed a review petition with the Workmen's Compensation referee requesting, among other issues, that the question of whether Trans America was entitled to subrogation be decided. In June 1992, the referee determined that Trans America was not entitled to subrogation. Subsequently, the Workmen's Compensation Appeal Board affirmed, as did the Commonwealth Court. *Byard F. Brogan, Inc., v. Workmen's Compensation Appeal Board (Morrissey)*, 161 Pa.Cmwlth. 453, 637 A.2d 689 (1994).

utes, since they deal with rights and liabilities controlled by a large body of civil law.

Judge Manning continued:

> Whether or not defendants may or may not have some ultimate right to the entire proceeds of the check is irrelevant to the determination of whether the charges have been properly filed and the Commonwealth has a right to proceed.

> While the defendants may well present evidence at trial that they reasonably believed, . . . that they were, lawfully entitled to the property; or that such evidence may form the basis for the argument that they lacked the requisite intent; the defendants have failed to establish that some or all of the proceeds of the check in question are *not* "property of another", either Transamerican or State Farm, which is their burden.

The matter proceeded to trial where the charges of forgery and criminal conspiracy were nolle prossed based upon a lack of evidence, and where Appellant was convicted of theft by failure to make required disposition of funds received and receiving stolen property. Mr. Morrissey was acquitted of all the charges brought against him.

At trial, Trans America claimed that Ms. Williams did not endorse the bank draft. Both sides presented conflicting evidence as to the validity of Ms. Williams' signature. In defending her actions, Appellant argues before us, as she did in her motion to dismiss at trial and before the Superior Court, that regardless of the genuineness of Ms. Williams' signature, the funds were never the property of Trans America, and therefore, a prosecution based on 18 Pa.C.S. § 3927 should never have been brought against her.[5]

---

5. Section 3927 of the Crimes Code, 18 Pa.C.S. § 3927, provides in pertinent part:

   § 3927. Theft by failure to make required disposition of funds received

   (a) Offense defined.—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent

■  Pursuant to that section, the crime of theft by failure to make required disposition of funds received is composed of four elements: 1) the obtaining of the property of another; 2) subject to an agreement or known legal obligation upon the receipt to make specified payments or other disposition thereof; 3) intentional dealing with the property obtained as the defendant's own; and 4) failure of the defendant to make the required disposition of the property. *Commonwealth v. Turrell,* 526 Pa. 42, 584 A.2d 882 (1990); *Commonwealth v. Van Nest,* 517 Pa. 44, 534 A.2d 473 (1987); *Commonwealth v. Ohle,* 503 Pa. 566, 470 A.2d 61 (1983).

Basically, Appellant argues that the Commonwealth failed to establish elements one, two and four of the crime since Trans America had no legal right to the funds. Appellant arrives at this conclusion by her argument that, as a matter of law, Trans America did not possess a valid subrogation lien on the funds and, therefore, could not claim any of the proceeds of the check as its own property.

In support of her position, Appellant posits that workmen's compensation carriers are statutorily precluded from asserting subrogation claims against an insurance settlement for injuries sustained in an automobile accident.

■  Appellant relies upon Section 1720 of the Pennsylvania Motor Vehicle Financial Responsibility Law (Financial Responsibility Law), 75 Pa.C.S. § 1720, which provides in pertinent part:

In actions arising out of the maintenance or use of a motor vehicle, *there shall be no right of subrogation or reimbursement* from a claimant's tort recovery with respect to worker's compensation benefits, ... (emphasis added).

We note that this statute barring subrogation rights has consistently been upheld as valid by our courts as in *Walters v. Kamppi,* 118 Pa.Cmwlth. 487, 545 A.2d 975 (1988); *appeal*

amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition....

*denied,* 520 Pa. 620, 554 A.2d 512 (1989), where the Commonwealth Court succinctly stated:

> Section 1720, . . . plainly prohibits "subrogation or reimbursement from a claimant's tort recovery with respect to worker's compensation benefits." We find these words to be clear and free from all ambiguity. . . .

*Walters,* 118 Pa.Cmwlth. at 493–494, 545 A.2d at 977.

*See also, Byard F. Brogan v. Workmen's Compensation Appeal Board (Morrissey), supra,* 161 Pa.Cmwlth. 453, 637 A.2d 689; *Allstate Insurance Company v. McFadden,* 407 Pa.Superior Ct. 537, 595 A.2d 1277 (1991); *appeal denied,* 529 Pa. 644, 602 A.2d 855 (1992); *Davish v. Gidley,* 417 Pa.Superior Ct. 145, 611 A.2d 1307 (1992) (no further review sought).

■ We agree with Appellant that Trans America had no right to subrogation or reimbursement and, accordingly, had no legal right to the funds covered by the draft in question, and therefore, we agree that Trans America's name was improperly included on the draft as a payee. As a result, Appellant was convicted of misappropriating monies to which Trans America had no right.

■ Interestingly, the lower courts allowed the Commonwealth to prove elements of the crime of failure to make required disposition of funds received by relying on provisions of the "civil law" but, in the alternative, when Appellant attempted to defend herself on other provisions of the "civil law" she was estopped. Relying on the Uniform Commercial Code, the Commonwealth argues that Trans America, as a joint payee, owned the whole interest in the draft and that circumstance is sufficient to satisfy its burden of proof concerning Trans America's ownership of the funds in question. Additionally, the Commonwealth asserts that the criminal elements were satisfied when Appellant deposited the draft with an allegedly forged or transferred signature of a Trans America employee again relying on its interpretation of Sec-

tion 3–116 of the Uniform Commercial Code (UCC).[6]  We believe that it was error to allow the Commonwealth to prove the elements of its case using the civil law without allowing the defense to bring to the attention of the court other elements of the civil law which have a direct bearing on the applicability of the Commonwealth's interpretation of the UCC, given the facts of this case.

■  When Section 3–116 of the UCC, is read *in pari materia* with the clear language of Section 1720 of the Financial Responsibility Law, 75 Pa.C.S. § 1720, we are not at all convinced that the Commonwealth's position is a correct reading of the law.  In fact, given the clear import of 75 Pa.C.S. § 1720, it becomes obvious that Trans America's name could only have been inserted on the check by mistake and that the parties had every right to ignore Trans America as a payee.

Our research reveals that an exception exists to the general rule (relied on by the Commonwealth) that the endorsement of all joint payees is essential to negotiation which is applicable under these circumstances.  The general rule is not enforceable in regard to a joint payee whose name had been *mistakenly* inserted or left on the paper, or to one who refuses to be a payee to it and who is treated by the drawer or promisor and other parties, both in the delivery of the instrument and in its transfer or negotiation, as no party and as having no interest in it.  Accordingly, it has been held that real payees can transfer ownership of an instrument without obtaining the endorsement of a payee whose name is thus upon the paper. *See*, 11 Am.Jur.2d § 321.  *See also: Starkey Construction, Inc. v. Elcon, Inc.*, 248 Ark. 958, 457 S.W.2d 509 (1970).

---

6.  Specifically, the Commonwealth argues that Appellant infringed upon Trans America's interest in the draft, at the time of the crime, under Section 3–116 of the UCC, 13 Pa.C.S. § 3116(2), which states:

An instrument payable to the order of two or more persons:

.     .     .     .     .     .

(2) if not in the alternative is payable to all of them and may be negotiated, discharged or enforced only by all of them.
13 Pa.C.S. § 3116(2) (amended by 13 Pa.C.S. § 3110).

██ **11**

██ Here, State Farm's inclusion of Trans America as a payee had no basis in law or fact and could only have been inserted as a mistake. Under these circumstances, we will not treat Trans America as an owner of any funds, which it was not, or as having been deprived of an interest in any funds when Appellant negotiated the draft.

The Commonwealth, however, also argues that our decision in *Commonwealth v. Rosenzweig*, 514 Pa. 111, 522 A.2d 1088 (1987), supports its decision to prosecute Appellant under these circumstances. There, a pharmacy clerk for Esquire Drug Store surreptitiously entered into a contract to sell manufacturer coupons. In his scam, the clerk would obtain coupons from sources other than the drug store and then send the coupons to the companies for redemption. The companies, unaware of the scheme, would issue checks to Esquire, but the clerk would intercept the checks, endorse Esquire's name upon the checks and then endorse his own name to the checks. The trial court quashed the information and the Superior Court affirmed the order. We reversed stating that the listing of Esquire as the owner of the property "was acceptable under the circumstances and, in any event, should not have been held fatal to the Commonwealth's case." *Id.*, at 118, 522 A.2d at 1092.

Nevertheless, *Rosenzweig* is clearly distinguishable from the case at bar. There, neither the defendant nor Esquire, the named payee, possessed a legal interest in the funds of the check since the check was issued as a result of the defendant's fraud. Here, Appellant is a named payee possessing a rightful legal interest in the settlement funds, and Trans America had no legal right to the funds in the draft even though its name appeared on the face of the document.

██ In short, we agree with Appellant that she cannot be convicted of misappropriating money which was legally her own. As such, the trial court erred in excluding all evidence regarding the invalidity of the Trans America subrogation lien since the invalidity of the lien, as a matter of law, nullifies the funds in question from being the property "of another"; pre-

12

cludes the funds from being subject to an agreement of "legal obligation"; and subject to a "required disposition," all of which are essential elements of the crime of theft by failure to make required disposition of funds received. As a matter of law, Trans America's subrogation lien was invalid and, therefore, Appellant's Motion to Dismiss should have been granted.

In light of our conclusions, Appellant's conviction for theft by failure to make required disposition of funds received must be reversed as well as Appellant's conviction for receiving stolen property.[7]

■ To prove the crime of receiving stolen property, the Commonwealth must establish possession of a stolen item and that the possessor knew, or had reason to know, that the item was stolen. *Commonwealth v. Scudder*, 490 Pa. 415, 416 A.2d 1003 (1980); *Commonwealth v. Peluso*, 481 Pa. 641, 393 A.2d 344 (1978).

■ Here, the funds from the draft were not stolen since Appellant and her husband had sole title to the proceeds of the draft. Consequently, Appellant could not be guilty of receiving stolen property which she never stole.

The Order of the Superior Court is reversed and the judgments of sentence on Appellant's convictions for theft by failure to make required disposition of funds received and receiving stolen property are vacated. This matter is remanded to the trial court with directions that an order be entered discharging Appellant.[8]

---

7. Section 3925 of the Crimes Code, 18 Pa.C.S. § 3925 provides:
§ 3925. Receiving stolen property
(a) Offense defined.—A person is guilty of theft is he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner.
(b) Definition.—As used in this section the word "receiving" means acquiring possession, control or title, or lending on the security of the property.

8. Because of our disposition of these convictions, it is unnecessary for us to address the merits of Appellant's additional arguments.

ZAPPALA, J., concurs in the result.

MONTEMURO, J., is sitting by designation.