J-A23007-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KASHAMARA GREEN | |
| Appellant | No. 1324 WDA 2014 |

Appeal from the Judgment of Sentence March 18, 2014
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001078-2012

BEFORE:  GANTMAN, P.J., LAZARUS, J., and MUSMANNO, J.

DISSENTING MEMORANDUM BY GANTMAN, P.J.:**FILED DECEMBER 22, 2015**

I respectfully disagree with the majority's decision to vacate Appellant's judgment of sentence and remand for a new trial. In my opinion, the admission of the limited testimony regarding the surveillance video was at most harmless error, in light of the other properly admitted evidence at trial as well as the jury's verdict. The Commonwealth's evidence, even without that particular testimony, was sufficient to convict Appellant of theft by failure to make a required disposition of funds received. Therefore, I dissent.

This Court has held:

> "Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Drumheller***, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123

S.Ct. 2284, 156 L.Ed.2d 137 (2003) (quoting ***Commonwealth v. Stallworth***, 566 Pa. 349, 363, 781 A.2d 110, 117 (2001)). "Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." ***Drumheller, supra*** (quoting ***Stallworth, supra*** at 363, 781 A.2d at 117–18).

***Commonwealth v. Reese***, 31 A.3d 708, 716 (Pa.Super. 2011) (*en banc*).

The "best evidence" rule provides "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules, other rules prescribed by the Supreme Court, or a statute provides otherwise." Pa.R.E. 1002. Rule 1004 of the Pennsylvania Rules of Evidence further provides, in relevant part:

**Rule 1004. Admissibility of Other Evidence of Content**

An original is not required and other evidence of the content of a writing, recording, or photograph is admissible if:

(a) all the originals are lost or destroyed, and not by the proponent acting in bad faith;

(b) an original cannot be obtained by an available judicial process;

\* \* \*

(d) the writing, recording, or photograph is not closely related to a controlling issue.

Pa.R.E. 1004(a)-(b), (d). Furthermore, Rule 1008 of the Pennsylvania Rules of Evidence provides:

- 2 -

**Rule 1008.  Functions of the Court and Jury**

Ordinarily, the court determines whether the proponent has fulfilled the factual conditions for admitting other evidence of the content of a writing, recording, or photograph under Rule 1004 or 1005.  But in a jury trial, the jury determines—in accordance with Rule 104(b)—any issue about whether:

\*    \*    \*

(c) other evidence of content accurately reflects the content.

Pa.R.E. 1008(c).  "The Best Evidence Rule is only applicable to the proof of the contents of the documents when the contents of those documents are material to, rather than mere evidence of, the issues at bar…."  **Commonwealth v. Lewis**, 623 A.2d 355, 358 (Pa.Super. 1993).  Thus, "[i]f the Commonwealth does not need to prove the contents of the writing or recording to prove the elements of the offense charged, then the Commonwealth is not required to introduce the original writing or recording."  **Commonwealth v. Dent**, 837 A.2d 571, 590 (Pa.Super. 2003).

An error at trial, however, does not automatically entitle an appellant to a new trial.  **Reese, supra** at 719.  "'[T]he harmless error doctrine, as adopted in Pennsylvania, reflects the reality that the accused is entitled to a fair trial, not a perfect trial….'"  **Id.** (quoting **Commonwealth v. West**, 834 A.2d 625, 634 (Pa.Super. 2003), *appeal denied*, 586 Pa. 712, 889 A.2d 1216 (2005)).  Harmless error exists when:

(1) the error did not prejudice the defendant or the prejudice was *de minimis*; or (2) the erroneously admitted

evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; **or** (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error so insignificant by comparison that the error could not have contributed to the verdict.

*Commonwealth v. Passmore*, 857 A.2d 697, 711 (Pa.Super. 2004), *appeal denied*, 582 Pa. 673, 868 A.2d 1199 (2005) (internal citation omitted). Harmless error is "a technique of appellate review designed to advance judicial economy by obviating the necessity for a retrial where the appellate court is convinced that a trial error was harmless beyond a reasonable doubt." *Commonwealth v. Koch*, 39 A.3d 996, 1006 (Pa.Super. 2011). "An error will be deemed harmless where the appellate court concludes beyond a reasonable doubt that the error could not have contributed to the verdict. If there is a reasonable possibility that the error may have contributed to the verdict, it is not harmless." *Commonwealth v. Mitchell*, 576 Pa. 258, 280, 839 A.2d 202, 214-15 (2003). The Commonwealth bears the burden to establish that the error was harmless. *Id.* at 280, 839 A.2d at 215.

Instantly, the Commonwealth charged Appellant with four counts of theft by failing to make the required disposition of funds and one count of forgery. Following trial, the jury convicted Appellant of only one count of theft and found him not guilty on the remaining counts. The court sentenced Appellant to three years' probation and restitution in the amount

of $2,900.83, which was the specific amount associated with the one-count conviction.

At Appellant's jury trial, the Commonwealth introduced the testimony of Shaun McDonald, the Loss Prevention Director at Family Dollar, PNC Bank and Internal Fraud Investigator, Colleen Doheny, and investigating detective Joseph Blaze. Chronologically speaking, Mr. McDonald received notice of a cash shortage at the Family Dollar store where Appellant was manager. Upon investigation, Mr. McDonald discovered four missing deposits from that store. After reviewing the store paperwork, Mr. McDonald was able to verify that several dollar amounts marked for deposit and signed by Appellant were not placed in the bank drop box or deposited; specifically, the July 10, 2011 proceeds ($2,900.83), the August 7, 2011 proceeds ($2,943.31), the August 19, 2011 proceeds ($2,302.31), and the September 1, 2011 proceeds ($3,302.56). Appellant gave a written, signed statement that he was responsible to take the deposits to the bank and was the only employee with a vehicle to do so. Appellant also gave Mr. McDonald a deposit slip for Family Dollar in the amount of $2,900.83, which stated it was for the business day of July 10, 2011 and was deposited on July 14, 2011. The Family Dollar deposit log, however, indicated that the $2,900.83 from the business day of July 10, 2011, was taken to the bank on July 12, 2011. Mr. McDonald was able to determine that the deposit slip Appellant gave him had been altered, because the sequence number and other information

Appellant provided corresponded to another deposit made the previous month (June 7, 2011). Mr. McDonald verified that the store managers were not permitted to keep the nightly deposits. (*See* N.T. Trial, 3/17-18/14, at 24-62.)

Ms. Doheny was initially asked to investigate a missing Family Dollar deposit. At trial, she testified that she reviewed the teller journals and was unable to locate that deposit for the date in question. She also reviewed the deposit ticket that Appellant had given to Mr. McDonald, representing a deposit of $2,900.83. Ms. Doheny recognized that the information on the slip did not line up evenly, and the printing was inconsistent with the bank's practice of using all capital letters for the month(s). Ms. Doheny suspected the deposit ticket was not genuine. Moreover, the ticket referenced a teller cash box that was not in operation on the date of the proposed deposit, July 14, 2011, as represented on the ticket. The sequence number on the ticket was also invalid. There was, however, a matching sequence number for a deposit the prior month, on June 7, 2011.

Ms. Doheny also reviewed surveillance tapes from PNC for the dates in question and saw no one on the tapes who matched Appellant's description. Before her testimony regarding the surveillance tapes, defense counsel objected based on the best evidence rule, because Ms. Doheny viewed the videos after the fact and the original videos were unavailable at trial. Instead of precluding this particular testimony, the court invited defense

counsel to cross-examine the witness vigorously.  Regarding the surveillance videos, Ms. Doheny then testified as follows:

> PROSECUTOR:   Ma'am, were you able to view any surveillance video from PNC?
>
> MS. DOHENY:   Yes.
>
> PROSECUTOR:   Were you given a description of [Appellant]?
>
> MS. DOHENY:   Yes.  They would call me. I would ask them a general description, and also I always ask for type of vehicle just in case I see them going in and out of the lot.
>
> PROSECUTOR:   Were you asked to view the video for certain days?
>
> MS. DOHENY:   Yes. I don't recall the days, but they do ask me in any investigation to view video.  I would review it for half an hour before the time and half an hour after the time, so I'll look for an hour.  If someone says they are at the bank of 12:00, I'll look at 11:30 to 12:30, giving some leeway there.
>
> PROSECUTOR:   Where do those cameras point to? What is the angle on those cameras?
>
> MS. DOHENY:   There [are] angles everywhere.  They are on the teller line.  They are on the night depository outside.  They are on the ATM outside.  They are on the ATM inside, night depository inside also.
>
> PROSECUTOR:   At any point while you were viewing those videos, did you see someone matching the description of the defendant on those videos?
>
> MS. DOHENY:   No, not during the time frame that they gave me to look at.
>
> PROSECUTOR:   What about his vehicle?

> MS. DOHENY: No, not during the time frame.
>
> \* \* \*

(*See id.* at 72-73.)  On cross examination, Ms. Doheny testified with respect

to the surveillance videos as follows:

> DEFENSE COUNSEL: Good afternoon, ma'am.  I'll ask you some questions as well.  The video you're speaking of, the time frame you were given, that was provided to you by the police; is that correct?
>
> MS. DOHENY: Yes.
>
> DEFENSE COUNSEL: So that was not a time frame that was provided to you by [Appellant], correct?
>
> MS. DOHENY: Correct.
>
> DEFENSE COUNSEL: You've never met—at the time that you were viewing these videos, you had never met [Appellant], correct?
>
> MS. DOHENY: Correct.
>
> DEFENSE COUNSEL: And so your only physical description of him was a photo that you looked at; is that correct?
>
> MS. DOHENY: No.  I don't ask for a photo.  I ask for a description, and then I look at the area where they are making the deposit and then the date and the time.
>
> DEFENSE COUNSEL: So you didn't even look at a photo of [Appellant].  You just had a verbal description of what he looked like?
>
> MS. DOHENY: Yes.

(*See id.* at 73-74.)  On redirect examination, the Commonwealth inquired

the following:

> PROSECUTOR: If you noticed anybody—while you

were viewing the video, if you noticed anybody closely matching the description that you were given, would you have told the police?

MS. DOHENY: I would have told them, and I would have printed a photo.

* * *

(*See id.* at 78-79.) This recounting represents the entirety of Ms. Doheny's limited testimony on the subject of the surveillance videos. As the text makes clear, defense counsel effectively called Ms. Doheny's testimony into question. Only later, in its March 2, 2015 opinion, the court second-guessed itself on allowing this testimony, based solely on this Court's decision in **Lewis, supra**. Without **any** analysis whatsoever, the court simply announced in its opinion that **Lewis** controlled **and** the error was not harmless. The majority simply mirrors this position.

Nevertheless, I think **Lewis** is not dispositive of the present case for several reasons. First, **Lewis** does **not** necessarily stand for the proposition that any violation of the best evidence rule is *per se* reversible error. Instead, **Lewis** turned on the facts and circumstances specific to that case. Second, the objectionable testimony in **Lewis** was about what the witness actually saw Appellant do on the videos, followed by the witness' interpretation of those actions, which raised the unfair inference that the appellant knew what his companion was doing. All the knowledge the witness possessed was solely from viewing the videos. This Court reasoned "the best evidence rule should apply to prevent mistransmission of the facts

surrounding [the appellant's] acts in the Sears store which might mislead the jury." *See Lewis, supra* at 358. Significantly, this Court said the error was not harmless because the properly admitted testimony of another witness was not independently cumulative[1] to prove the appellant knew his companion intended to remove merchandise from the store without paying for it. Therefore, admission of that particular video testimony violated the best evidence rule and was not harmless error. *Id.* at 359.

Presently, the Commonwealth introduced Ms. Doheny's testimony regarding her observation that Appellant did not appear on the surveillance videos, presumably to show Appellant failed to make the required deposit at the time he said he had made it. Because this testimony could possibly be related to a controlling issue, *i.e.*, whether Appellant made the missing deposit when he claimed he did, the Commonwealth probably should have introduced the original surveillance videos.[2] *See* Pa.R.E. 1002 and Pa.R.E. 1004(d). Therefore, Ms. Doheny's testimony arguably violated the best evidence rule.

I am convinced, however, that the admission of Ms. Doheny's limited

_____

[1] In fact, this Court remarked that the only other evidence against Appellant was actually contradictory. *Id.* at 359.

[2] The Commonwealth insists it offered the surveillance video testimony only to show whether Appellant physically appeared at the bank, not to prove an element of the crime. The Commonwealth's intent, however, does not strictly control the potential effect this evidence could have on the jury.

surveillance video testimony was harmless error. For example, Ms. Doheny testified she also conducted a search of the records and teller electronic journals from the PNC at Penn Hills to determine whether any deposits had been made to Family Dollar's account on July 14, 2011 for $2,900.83. Ms. Doheny testified there was no record a deposit in that amount had ever been made on July 14, 2011. Moreover, Ms. Doheny testified the deposit slip that indicated $2,900.83 had been placed into Family Dollar's account, allegedly on July 14, 2011, did not appear to be genuine. Ms. Doheny stated that, not only did the deposit slip appear to be doctored from an earlier deposit, but also the deposit slip indicated it was from a cash box that was not working on July 14, 2011. Thus, Ms. Doheny gave additional testimony that showed Appellant did not make a deposit of $2,900.83 on July 14, 2011, as he had claimed. (**See** N.T. Trial at 64-69.) Thus, the admission of Ms. Doheny's limited testimony regarding the surveillance videos, if error, was harmless; and, beyond reasonable doubt it did not contribute to the verdict. **See Mitchell, supra** at 280, 839 A.2d at 214-15.

Moreover, other properly admitted evidence at trial overwhelmingly established Appellant's guilt of theft by failure to dispose of funds. The Commonwealth demonstrated (1) Appellant was the sole person in charge of depositing the $2,900.83 from the day's business of July 10, 2011 into Family Dollar's corporate PNC account; (2) a specific cash deposit was not placed in Family Dollar's Corporate Banking account or received by PNC

Bank; (3) an internal investigation revealed the $2,900.83 missing from the appropriate account, was not the bank's fault or the fault of one of its employees, and the amount in question was not received or deposited into any other PNC account; and (4) after learning of the investigation, Appellant offered a deposit receipt for the amount of $2,900.83, which proved to have been fabricated. In reviewing previous deposits from Family Dollar, Ms. Doheny was able to determine that a true deposit had been made at the exact time, with the exact sequence number and by the same cash deposit box a month earlier than purported on the proffered receipt. Thus, the Commonwealth's properly admitted and uncontradicted evidence of Appellant's guilt was sufficient to support the verdict. In fact, the jury acquitted Appellant of three of the theft counts and convicted him only of the one associated with the fake deposit slip. Especially in light of the final outcome at trial, any prejudicial effect of the testimony at issue was so *de minimus* by comparison that it could not have contributed to the jury's verdict. **See Passmore, supra**. Given the relevant law and the facts of this case, I see absolutely no need for a new trial.

Additionally, I think we should address Appellant's argument that the evidence was insufficient to support his conviction on the one count of theft by failure to make a required disposition of funds received. In so doing, I observe:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted…in

the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

Theft by failure to make a required disposition of funds received is defined in relevant part as follows:

**§ 3927.    Theft by failure to make required disposition of funds received**

**(a) Offense defined.**—A person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition. The foregoing applies notwithstanding that it may be impossible to identify particular property as

> belonging to the victim at the time of the failure of the actor to make the required payment or disposition.

18 Pa.C.S.A. § 3927(a).  This offense has four elements:

> 1) the obtaining of the property of another; 2) subject to an agreement or known legal obligation upon the receipt to make specified payments or other disposition thereof; 3) intentional dealing with the property obtained as the defendant's own; and 4) failure of the defendant to make the required disposition of the property.

***Commonwealth v. Morrissey***, 540 Pa. 1, 8, 654 A.2d 1049, 1052 (1995).

Here, in addition to Ms. Doheny's testimony, the Commonwealth also introduced the testimony of Mr. McDonald, the Loss Prevention Director at Family Dollar at the time of Appellant's employment.  Mr. McDonald testified at trial: (1) he was asked to conduct an investigation for the Penn Hills Family Dollar in September 2011, regarding missing deposits; (2) he reviewed the store's deposit logs and saw Appellant's signature was located next to a deposit of $2,900.83 that he claimed he made at PNC on July 14, 2011; he further testified, however, that he spoke with Family Dollar's corporate office and verified that this deposit was never received; he then interviewed Appellant, who admitted he was responsible for the July 14, 2011 deposit and signed off on it in the logbook after he made the deposit at the bank; Appellant also gave Mr. McDonald a written statement corroborating what Appellant had told Mr. McDonald; (3) he examined the deposit slip from July 14, 2011, and determined it was altered from a previous deposit slip because the sequence number and other information

Appellant provided actually corresponded to another deposit made the previous month (June 7, 2011); (4) he verified that the store managers were not permitted to keep the nightly deposits. (*See* N.T. Trial, 3/17-18/14, at 24-62.)

The Commonwealth also presented the testimony of Detective Joseph Blaze from the Penn Hills Police Department who conducted an outside investigation in 2011. Detective Blaze said he interviewed Appellant regarding the missing deposits, and Appellant acknowledged that on July 14, 2011, he had the $2,900.83, which he took to PNC to deposit. (*See id.* at 81-82.) Detective Blaze stated Appellant had no explanation as to why the money was missing. (*Id.* at 81-84).

Viewed in the light most favorable to the Commonwealth as verdict winner, I am certain the evidence was sufficient to sustain the jury's verdict. *See Morrissey, supra*; *Hansley, supra*; 18 Pa.C.S.A. § 3927(a). Therefore, I would affirm Appellant's judgment of sentence. Accordingly, I dissent.